USCA1 Opinion

 

 April 7, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 92-2087 CHARLES D. LEMA, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ ERRATA SHEET The opinion of this Court issued March 3, 1993, is amended as follows: Page 9, line 11 of text, should read: DiSalvo, 726 F. Supp. 596, _______ 598 . . . March 3, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2087 CHARLES D. LEMA, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Hector M. Laffitte,* U.S. District Judge] ___________________ ____________________ Before Torruella and Cyr, Circuit Judges, ______________ and Bownes, Senior Circuit Judge. ____________________ ____________________ Christopher W. Dilworth for appellant. _______________________ F. Mark Terison, Assistant United States Attorney, with whom ________________ Richard S. Cohen, United States Attorney, was on brief for appellee. ________________ ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. March 3, 1993 ____________________ CYR, Circuit Judge. Charles Donald Lema, convicted of various CYR, Circuit Judge. ______________ drug charges, appeals the dismissal of his petition for postconviction relief under 28 U.S.C. 2255. Lema asserts that his attorney was ineffective, his trial was tainted by prosecutorial misconduct, and his sentencing proceeding was infected by factual error. We affirm. I I BACKGROUND BACKGROUND __________ In 1989, following a federal undercover operation, Lema was indicted on two counts of conspiring with Raymond Souza to distribute cocaine to Alex Hood, a DEA informant, and on two related counts of aiding and abetting Souza's cocaine distributions. The first brace of counts charged that on December 15, 1988, Lema aided and abetted Souza in the sale of one kilogram of cocaine to Hood [the "December transac- tion"]. The second brace of counts charged that on January 25, 1989, Lema, Souza, and a third man, Alberto Monsalve-Zapata, sold three kilograms of cocaine to Hood and another undercover agent, Michael Bansmer, as part of a ten-kilogram transaction negotiated by Souza [the "January transaction"]. The government does not dispute that Souza took the most active role in arranging and consummating these transactions; however, it suggests that Lema's culpability was reason- ably inferable from his presence, with Souza, throughout both transac- tions, and from certain telltale statements made in the presence of undercover officers, indicating Lema's knowing participation in the distribution scheme.2 Lema pleaded not guilty to all charges. Prior to trial, he dis- charged his court-appointed counsel and retained David Pomeroy, Esquire. Lema met with Pomeroy several times, and emphatically expressed his desire to testify at trial.3 In furtherance of Lema's stated desire to testify, Pomeroy filed a motion in limine to preclude cross-examination about Lema's prior criminal conviction for inter- state transportation of stolen property. The motion was denied on August 7, 1991. Trial began the next day. At trial, the defense contended that though Lema may have been at the scene of the drug transactions, he neither actively participated in, nor was he aware of, Souza's cocaine dealings on those occasions. The government's case was based largely on the testimony of Hood and Bansmer, who testified to Lema's presence at the scene of the drug exchanges. The purport of their testimony was that it would have been virtually impossible for Lema not to have known that Souza was conducting drug transactions on those occasions. At the close of the government's case, Lema conferred with Pomeroy and ____________________ 2For a fuller description of Lema's involvement in these transactions, and his subsequent trial, see United States v. Lema, 909 F.2d 561 (1st _____________ ____ Cir. 1990). 3Lema also recommended that Pomeroy call three witnesses to corrobo- rate his story: Souza, Ann Marie Burke, and Patricia Lyons. See ___ infra at pp. 12-17. _____ 3 again expressed his desire to testify. Pomeroy no less emphatically advised Lema that the government's case was weak and that in light of the denial of the motion in limine Lema's testimony would expose him to cross-examination concerning his prior conviction, would lose the sympathy of the jury, and therefore would be unwise. An argument ensued, witnessed by courtroom observers; Lema did not testify. Pomeroy then recalled one witness, a DEA agent who had attempted to record the December drug transaction but failed to capture Lema's voice on tape. The defense rested. At closing argument, the prosecutor acknowledged that Lema said little during the course of the two drug transactions, but urged the jury to infer Lema's knowledge of Souza's drug dealings, and Lema's intent to participate in the drug distribution scheme, from the fact that Lema had been present and remained silent during both transac- tions. Lema was convicted on all counts. Thereafter, Lema, acting pro se, moved for a new trial, accusing ___ __ Pomeroy of ineffective assistance. At Lema's request, Pomeroy with- drew, and successor counsel was appointed to represent Lema at sen- tencing. The district court dismissed Lema's motion for new trial as untimely. The court sentenced Lema to 135 months in prison. We affirmed Lema's conviction on direct appeal. See note 1 supra. ___ _____ Undaunted, Lema moved for vacation of sentence and new trial under 28 U.S.C. 2255. The district court summarily denied four of Lema's habeas claims but reserved judgment on the fifth, which alleged that Pomeroy prevented him from testifying. After an evidentiary 4 hearing, a magistrate-judge recommended denial of the ineffective assistance claim. The district court thereupon denied the section 2255 petition in its entirety. II II DISCUSSION DISCUSSION __________ This appeal has two parts: a formal appeal, filed by appellate counsel, asserting ineffective assistance by trial counsel; and a supplemental pro se brief, raising claims of prosecutorial misconduct ___ __ and sentencing error. We address each in turn. A. Ineffective Assistance of Counsel. A. Ineffective Assistance of Counsel. _________________________________ The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. __________ __________ 668, 687 (1984). But "[t]he Constitution does not guarantee a defen- dant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d _____________ _______ 302, 309-10 (1st Cir. 1991) (citation omitted), cert. denied, 112 S. _____ ______ Ct. 986 (1992). A petitioner bears a very heavy burden on an ineffec- tive assistance claim. The habeas court must "evaluate the [chal- lenged] conduct from counsel's perspective at the time," Strickland, __________ 466 U.S. at 689, considering "the totality of the circumstances before it," Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984), and making ______ ______ "every effort . . . to eliminate the distorting effects of hindsight," 5 Strickland, 466 U.S. at 689. It "must indulge a strong presumption __________ that counsel's conduct falls within a wide range of reasonable profes- sional assistance; that is, the defendant must overcome the presump- tion that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted). Moreover, ___ the court must not only find that defense counsel's performance was deficient, but that it was so prejudicial as to undermine confidence in the outcome of the trial, see id. at 693-94, and the fundamental ___ ___ fairness of the result. Lockhart v. Fretwell, 61 U.S.L.W. 4155 (Jan. ________ ________ 25, 1993). The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence. See Myatt v. United ___ _____ ______ States, 875 F.2d 8, 11 (1st Cir. 1989); United States v. DiCarlo, 575 ______ _____________ _______ F.2d 952, 954 (1st Cir.), cert. denied, 439 U.S. 834 (1978). Where a _____ ______ petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case," DiCarlo, 575 F.2d at 954, summary dismissal _______ _______ _________ is appropriate. Moreover, "even a section 2255 petition predicated on specific assertions of fact allegedly supported in the record may be dismissed summarily by the district court," Barrett v. United States, _______ _____________ 965 F.2d 1184, 1186 (1st Cir. 1992), provided "the district court can . . . 'test' the . . . allegations by assuming arguendo their truth, ________ and then assessing their sufficiency in light of the relevant consti- tutional standards and the record." Id., quoting Moran v. Hogan, 494 ___ _____ _____ 6 F.2d 1220, 1222 (1st Cir. 1974); see also United States v. Butt, 731 ___ ____ _____________ ____ F.2d 75, 77 (1st Cir. 1984). 1 . 1 . The Alleged Prevention of Lema's Testimony. The Alleged Prevention of Lema's Testimony. __________________________________________ Pomeroy prevailed in the argument over whether it would be advisable for Lema to testify. Lema now claims that Pomeroy's advice in effect prevented Lema from testifying, and amounted to ineffective _________ assistance of counsel, see United States v. Teague, 953 F.2d 1525, ___ ______________ ______ 1532, 1534 (11th Cir.) (en banc), cert. denied, 113 S. Ct. 127 (1992). _____ ______ The government responds that Lema knowingly and voluntarily accepted Pomeroy's advice, and must, in effect, live with the consequences. a.The Right to Testify. a.The Right to Testify. ____________________ We assume, without deciding, that the constitutional right to testify in one's defense is "fundamental," and, as such, may not be waived by counsel on the defendant's behalf, regardless of the sound- ness of any strategic or tactical considerations.4 It is unnecessary ____________________ 4The right to testify in one's defense has been recognized as "funda- mental" by the Supreme Court in dictum on several occasions. See Rock ___ ____ v. Arkansas, 483 U.S. 44, 53 n.10 (1987) ("[o]n numerous occasions the ________ Court has proceeded on the premise that the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitu- tional right"); id. at 52 (finding right "[e]ven more fundamental to a ___ personal defense than the right of self-representation"); see also ___ ____ Jones v. Barnes, 463 U.S. 745, 751 (1983) ("the accused has the _____ ______ ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); Wainwright v. Sykes, 433 U.S. 72, __________ _____ 93 n.1 (1977) (Burger, C.J., concurring) ("[o]nly such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make"); cf. Nix v. Whiteside, ___ ___ _________ 7 to address the underlying issue, as we conclude that Lema, on advice of counsel, knowingly and voluntarily, if reluctantly, refrained from testifying in his own defense. Unaccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right, see Teague, 953 F.2d at 1534- ___ ______ 35; Rogers-Bey, 896 F.2d at 283, but simply discharges defense coun- __________ sel's ethical responsibility to the accused. See ABA Standards ___ Relating to the Administration of Criminal Justice, Compilation p. 127 (1974) ("the decisions which are to be made by the accused after full consultation with counsel are . . . (iii) whether to testify in his own behalf."). The difficult line courts must draw between earnest counseling and overt coercion is guided by several considerations, including: (1) whether the defendant knew about his constitutional right to testify, and if not, whether he was informed by counsel, see ___ ____________________ 475 U.S. 157, 164 (1986) ("[a]lthough this Court has never explicitly held that a criminal defendant has a due process right to testify in his own behalf . . . the right has long been assumed"). Virtually all circuits which have considered the issue since 1987 have reached the same conclusion. See, e.g., Teague, 953 F.2d at 1531-32; United ___ ____ ______ ______ States v. McMeans, 927 F.2d 162 (4th Cir. 1991); Rogers-Bey v. Lane, ______ _______ __________ ____ 896 F.2d 279 (7th Cir. 1990), cert. denied, 111 S. Ct. 93 (1990); _____ ______ United States v. Martinez, 883 F.2d 750, 754 (9th Cir. 1989); vacated _____________ ________ _______ on other grounds, 928 F.2d 1470 (9th Cir. 1991); United States v. __ _____ _______ ______________ Bernloehr, 833 F.2d 749 (8th Cir. 1987); United States v. Curtis, 742 _________ _____________ ______ F.2d 1070, 1076 (7th Cir. 1984), cert. denied, 475 U.S. 1064 (1986); _____ ______ United States v. Bifield, 702 F.2d 342 (2d Cir.), cert. denied, 461 _____________ _______ _____ ______ U.S. 931 (1983); see generally Marjorie Rifkin, The Criminal Defen- ___ _________ ____________________ dant's Right to Testify: The Right to Be Seen but not Heard, 21 __________________________________________________________________ Colum. Human Rts. L. Rev. 253 (1989). Although this court has never formally considered the issue, Judge Reinhardt, sitting by designa- tion, described the testimonial right as "fundamental" in a concurring opinion in United States v. Nivica, 887 F.2d 1110, 1128 (1st Cir. ______________ ______ 1989), cert. denied, 494 U.S. 1005 (1990). _____ ______ 8 Teague, 953 F.2d at 1533 ("defense counsel bears the primary responsi- ______ bility for advising the defendant of his right to testify or not to testify"); see also Bernloehr, 833 F.2d at 751 ("the defendant's ___ ____ _________ waiver of his right to testify, like his waiver of other constitu- tional rights, must be made voluntarily and knowingly"); (2) the competence and soundness of defense counsel's tactical advice, i.e., ____ whether counsel presents the defendant with sufficient information to permit a "meaningful" voluntary waiver of the right to testify, see ___ United States v. Poe, 352 F.2d 639, 640-41 (D.C. Cir. 1965) (finding _____________ ___ deprivation of fair trial where counsel misinformed defendant of consequences of taking the stand); United States v. DiSalvo, 726 F. _____________ _______ Supp. 596, 598 (E.D. Pa. 1989) (holding that defendant had not waived testimonial right where counsel failed to ensure defendant's knowledge of his right to testify, or otherwise to provide relevant information that would enable a meaningful decision); and (3) any intimidation or threatened retaliation by counsel relating to the defendant's testimo- nial decision. See, e.g., Nichols v. Butler, 953 F.2d 1550, 1553 ___ ____ _______ ______ (11th Cir. 1992) (finding coercion where counsel, in effort to coerce defendant to waive testimonial right, threatened to withdraw during trial). With these considerations in mind, we inquire whether Pome- roy's vigorous expression of views during their argument coerced Lema into waiving the right to testify. b . b . The Evidence of Coercion. The Evidence of Coercion. ________________________ 9 The district court concluded that Lema, notwithstanding some initial resistance, knowingly and voluntarily acceded to Pomeroy's advice and waived his right to testify, consistent with the articulat- ed trial strategy. The court found no evidence that Pomeroy had attempted to coerce Lema's testimonial decision, nor that he had overborne Lema's will. We review these district court findings for "clear error." See Ouimette v. Moran, 942 F.2d 1, 5 (1st Cir. 1991) ___ ________ _____ (clear error review of "mixed questions" in habeas corpus context). At the evidentiary hearing, Lema conceded that he had argued vigorously, but that he ultimately "agreed" with Pomeroy that it would be unwise to testify: Q : But . . . you agreed with Pomeroy not to testify. A : Yes, I agreed after on his advice. Q : And you agreed after weighing these facts that I've just gone over with you, facts that Pomeroy could deliver a dynamite clos- ing argument, right? . . . . And that played and weighed in your decision not to testify? A : Yes, that played a role in it, yes. Q : And another thing that played a role was that Pomeroy was an experienced criminal lawyer who knew what he was doing, right? A: Yes. We think Lema's admitted agreement with Pomeroy's advice, albeit reluctant, provided sufficient support for the district court finding that Lema was not "coerced." Other evidence corroborates the district 10 court finding. For example, in an August 16, 1989 letter to Lema, Pomeroy recalls, among other things, that Lema "elected not to testi- _______ fy," after considering the effect of the district court's denial of the motion in limine. More generally, Lema was neither a newcomer to the American justice system nor unaware that he had the right to testify in his own defense. Indeed, the apparent vehemence with which Lema at first insisted on testifying, as evidenced by his argument with Pomeroy, fairly may have reflected Lema's clear awareness that the ultimate decision was his to make. The district court supportably found that Lema was not coerced into waiving the right to testify.5 2.The Failure to Call Proposed Defense Witnesses. 2.The Failure to Call Proposed Defense Witnesses. ______________________________________________ Lema asserts, as a second basis for the "ineffective assistance" claim, that Pomeroy neither interviewed, nor presented, three poten- tial defense witnesses proposed by Lema, thereby depriving him of a "viable defense," see United States v. Porter, 924 F.2d 395, 397 (1st ___ _____________ ______ ____________________ 5As the factual underpinnings for Lema's ineffective assistance claim are inadequate, we need not consider whether denial of a defendant's right to testify is ever subject to "harmless-error" analysis. Compare, e.g., Ortega v. O'Leary, 843 F.2d 258, 262 (7th Cir.), cert. _______ ____ ______ _______ _____ denied, 488 U.S. 841 (1988) (applying harmless-error analysis to ______ denial of defendant's right to testify); with, e.g., Martinez v. Ylst, ____ ____ ________ ____ 951 F.2d 1153, 1157 (9th Cir. 1991) ("[a]s a general matter, it is only the most extraordinary of trials in which a denial of the defen- dant's right to testify can be said to be harmless beyond a reasonable doubt"); United States v. Butts, 630 F. Supp. 1145, 1148 (D. Me. 1986) _____________ _____ ("a defendant's right to testify in a criminal proceeding against him [is] so basic to a fair trial that its infraction can never be treated as a harmless error"); Wright v. Estelle, 572 F.2d 1071, 1084 (5th ______ _______ Cir.) (Godbold, J., dissenting) (rejecting harmless-error analysis in context of testimonial right), cert. denied, 439 U.S. 1004 (1978). _____ ______ 11 Cir. 1991).6 Lema argues that these witnesses could have provided evidence tending to show that he was unaware of Souza's purpose when he agreed to drive north with Souza on the two trips that culminated in the monitored drug transactions. The district court summarily dismissed the claim, apparently on the ground that Lema's section 2255 motion failed conclusively to "overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. We agree. __________ The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipat- ed, see Porter, 924 F.2d at 397, or the witness's demeanor or charac- ___ ______ ter may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused, see, e.g., ___ ____ United States v. Tajeddini, 945 F.2d 458, 466 (1st Cir. 1991) ("to ______________ _________ call as a witness a person other than Parvin to testify to Parvin's ____________________ 6The government argues that Lema's petition was conclusory in this regard, i.e., that it failed to name the three putative witnesses. ____ See United States v. Michaud, 925 F.2d 37, 39 (1st Cir. 1991) (on ___ ______________ _______ motion for post-judgment relief, "'conclusory allegations unsupported by specifics are insufficient to require a court to grant an eviden- tiary hearing'") (quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1210 _________ __________ (10th Cir. 1989)). We do not agree. Lema's affidavit, attached to and referenced in the section 2255 motion, made clear the identities ___ __________ __ of the witnesses and the nature of their anticipated testimony. Given Lema's pro se status, the reference by attachment, though perhaps ___ __ technically deficient, was sufficient to alert the court and the government to the specific basis of Lema's claim. Cf. Haines v. ___ ______ Kerner, 404 U.S. 519, 520-21 (1972) (holding pro se complaints "to ______ ___ __ less stringent standards than pleadings drafted by lawyers"). 12 health might emphasize Parvin's absence and suggest that Parvin's testimony would have been adverse to petitioner"), cert. denied, 112 _____ ______ S. Ct. 3009 (1992). Where the prosecution's case is less than compel- ling, as Pomeroy represented to Lema during trial, the risk of "rock- ing the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony. Johnson v. Lockhart, 921 F.2d 796, 800 (8th Cir. 1990) ("since the _______ ________ government has the burden of proving guilt beyond a reasonable doubt, it may not be necessary for the defense to introduce evidence to meet the constitutional requirement of effective representation"); cf. ___ Natanel, 938 F.2d at 310 ("additional arguments could only impair [a] _______ client's seemingly secure position . . . . In litigation, as in life, there is much to be said for such maxims as 'if it ain't broke, don't fix it,' and 'quit when you're ahead'"). There is little reason to believe that Pomeroy's failure to present the three witnesses proposed by Lema was anything other than a tactical decision. The government's case was relatively weak, based largely on the testimony of two witnesses, one a paid informant. Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence. Furthermore, the availability of the putative testimony was problemat- 13 ic at best.7 Finally, Pomeroy was well aware of the risks in calling Souza, even assuming he was available to testify: Lema himself mentioned to Pomeroy that, just prior to starting out with Souza on the January drug transaction, Lema had said to Souza "I don't want to be involved." Had Souza testified to this admission, it clearly would have invited the reasonable inference that Lema knew in advance of the illegal purpose of the January transaction.8 ____________________ 7Lema presented no affidavit from Souza, and no credible evidence, that Souza's testimony would have been available. At the time of Lema's trial, Souza was awaiting sentencing; he therefore retained a valid Fifth Amendment right against self-incrimination. United States _____________ v. Lugg, 892 F.2d 101, 102-03 (D.C. Cir. 1989); cf. United States v. ____ ___ _____________ Zirpolo, 704 F.2d 23, 26 (1st Cir.) (co-defendant retained Fifth _______ Amendment right where prosecutor had agreed to recommend dismissal, but charges had not yet been formally dismissed), cert. denied, 464 _____ ______ U.S. 822 (1983). Given the pendency of sentencing proceedings, we will not assume that Souza would have waived his Fifth Amendment privilege, particularly in support of Lema's version of the events which would have exposed Souza as the only culpable participant and the person who had recruited an unsuspecting Lema. Cf. Brien v. ___ _____ United States, 695 F.2d 10, 16 (1st Cir. 1982) ("given the fact that _____________ [the codefendant] was then awaiting his own trial, it is highly doubtful that he would have agreed to testify in any event"). 8Another proposed witness, Burke, supposedly was willing to testify that Souza had told her that Lema did not know about the drug deals, and had gone along only "for the ride." It is highly doubtful that Burke's hearsay testimony would have been admissible for any purpose, see Fed. R. Evid. 801, absent the testimony of Souza, whose "avail- ___ ability" was entirely conjectural. See supra note 6. ___ _____ The testimony of the third individual, Lyons, was tenuous and collateral, and would not have absolved Lema. Lema contends that Lyons would have testified that she declined an invitation to accompa- ny Souza to Maine just before the January transaction. We are unable to discern any relevance in this testimony. However, if it were admissible, and the jury were to infer that Lyons had refused because she knew in advance of Souza's illegal purpose, the testimony might have tended to undercut Lema's claim of ignorance as well. 14 Lema argues that these strategic considerations are entitled to little or no deference, since Pomeroy not only neglected to call these witnesses but failed to investigate their potential testimony. See ___________ ___ Barrett, 965 F.2d at 1193 (citing Strickland, 466 U.S. at 690) (- _______ __________ "'strategic choices made after thorough investigation of law and facts _____ ________ _____________ relevant to plausible options are virtually unchallengeable'") (empha- sis added); McCoy v. Newsome, 953 F.2d 1252, 1263 (11th Cir.) (- _____ _______ "[f]ailure to investigate evidence that would be helpful to the defense is an indication of ineffective assistance"), cert. denied, _____ ______ 112 S. Ct. 2283 (1992). The decision to interview potential witnesses, like the decision _________ to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case. See Wilkins v. Iowa, 957 F.2d 537, 540 (8th Cir. ___ _______ ____ 1992) ("[a] less than exhaustive investigation is adequate for consti- tutional purposes . . . if reasonable professional judgments justified limiting its scope"). In view of the obvious tactical risks and limited benefits discussed above benefits and risks which would have been readily apparent to experienced trial counsel without conducting an interview or further investigation we think that Pomeroy's failure to interview the three proposed witnesses did not amount to ineffective assistance in the constitutional sense. "Coun- sel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or ________ insubstantial as a matter of law, or, as here, as a matter of fact and 15 of the realities of proof, procedure, and trial tactics," Cepulonis v. _________ Ponte, 699 F.2d 573, 575 (1st Cir. 1983) (emphasis added). _____ 16 3 . 3 . The Tape Recordings. The Tape Recordings. ___________________ The extent of Lema's participation in the actual drug exchanges was a major issue at trial. A government agent (Bansmer) testified that Lema said nothing during the second (January) drug exchange: but Hood, the informant, testified that Lema said to Souza, "let's do the deal and get going," perhaps implying knowledge of the purpose of Souza's trip. Lema now asserts that Pomeroy should have used the government's tape recordings of the incident (which did not pick up Lema's voice) to impeach Hood's testimony. Indeed, Lema charges, Pomeroy did not even attempt to obtain the tapes to learn what was on them. The district court found that Pomeroy's cross-examination of Hood showed that Pomeroy was aware of the contents of the tapes, and that the decision not to play the tapes at trial was a matter of "trial strategy": The record reveals that Lema's defense counsel engaged in extensive cross-examination about the existence of tapes of the . . . transactions and attempted to establish "that there were no recordings that backed up the testimony of the gov- ernment's witnesses." Lema, 909 F.2d at 567. Additionally, ____ it can be reasonably inferred from the form of the question- ing that Lema's attorney had informed himself of the contents of those tapes and decided not to use them at trial since they were neither exculpatory nor clear. Id. Such tactical ___ decisions are "deemed to be effective assistance." Opinion at 4 (citing United States v. Tabares, 951 F.2d 405, 409 (1st _____________ _______ Cir. 1991)). The factual finding that Pomeroy had access to the tapes 17 was not clearly erroneous, and our own reading of Pomeroy's cross- examination of Hood accords with the district court's understanding.9 While these trial tactics may appear dubious to the petitioner in hindsight, especially in the grim reflection of the intervening convictions, the reviewing court must be persuaded that the failed trial strategy was not within the "wide range of reasonable profes- sional assistance" contemplated by Strickland. We are not persuaded __________ that the failure to introduce the tapes was beyond Strickland's pale. __________ 4.Other Claims. 4.Other Claims. ____________ The two remaining claims emphasized in Lema's supplemental pro se ___ __ brief are without merit. First, Lema alleges that the prosecutor's closing argument included an indirect comment on Lema's failure to testify. Although Lema states a cognizable claim under Griffin v. _______ California, 380 U.S. 609, 614 (1965) (prosecutor's comment on defen- __________ dant's failure to testify violates Fifth Amendment), our review convinces us that the claim is unsubstantiated. The transcript reveals that the prosecutor's comments were not addressed to Lema's ____________________ 9Lema asserts that Pomeroy was "surprised" at trial when Hood (the government's first witness) stated that he had worn a recording device during the January transaction. Fairly read, however, we believe the transcript is ambiguous: it appears that Pomeroy either misunder- stood, or failed to recall, Hood's earlier testimony that he had not worn a recorder during a different meeting with Souza. Moreover, _________ documentary evidence confirms that Pomeroy had access to the tapes prior to trial. Pomeroy wrote to the prosecutor on March 8, 1989, expressing his understanding that "you will have copies of the . . . audio recordings for our review sometime next week," and, when Lema received Pomeroy's files in fall 1989, the files contained a partial transcript of the tapes. 18 silence at trial, but merely pointed out, as evidence of Lema's __ _____ complicity, that Lema was present and remained silent while both drug transactions were carried out by Souza. Such evidence is both admis- sible and potentially probative. See United States v. Ortiz, 966 F.2d ___ _____________ _____ 707, 714 (1st Cir. 1992) (defendant's silent presence at drug transac- tion "patently implied participation" where surrounding circumstances indicated knowledge thereof). The cases Lema cites, United States v. _____________ Cox, 752 F.2d 741, 745 (1st Cir. 1985), and United States v. Skandier, ___ _____________ ________ 758 F.2d 43, 45-46 (1st Cir. 1985), are readily distinguishable; both found prosecutorial misconduct where the Government asked the jury to consider how a defendant "explained" certain evidence, a clearly _________ impermissible reference to the defendant's silence in the trial __ ___ _____ setting.10 As Lema's claim misapprehends the prosecutor's state- _______ ment, we reject it. Lema's final claim is that the attorney who represented him at the sentencing hearing rendered ineffective assistance by failing to object to the district court's finding that the conspiracy to distrib- ute involved eleven kilograms of cocaine. Lema argues that only four kilograms of cocaine changed hands while he was present; the other ____________________ 10United States v. Buege, 578 F.2d 187 (7th Cir.), cert. denied, 439 ______________ _____ _____ ______ U.S. 871 (1978), is also distinguishable: there the prosecutor, at closing argument, repeatedly used the term "uncontradicted testimony," to refer to testimony which only the defendant was in a position to contradict. The court found that the prosecutor's references were "manifestly intended" to call attention to the defendant's failure to testify. Id. at 188. In Lema's case, by contrast, the prosecutor's ___ reference to Lema's silence plainly called attention to the defen- dant's silence at the scene of the crime. __ ___ _____ __ ___ _____ 19 seven kilograms were part of a deal negotiated by Souza outside Lema's __ _____ presence, and, in any event, only four of these seven kilograms were ever accounted for by the police. The claim is baseless. The evidence adduced at trial and at sentencing including the fact that Lema was with Souza at the scene of both cocaine exchanges would have supported a reasonable inference that Lema and Souza were coconspirators, chargeable with all intended distributions ___ negotiated by either conspirator. See United States v. Bello-Perez, ___ _____________ ___________ 977 F.2d 664, 673 (1st Cir. 1992); United States v. Moreno, 947 F.2d _____________ ______ 7, 9 (1st Cir. 1991). It is immaterial that the police recovered only a portion of the cocaine Souza agreed to deliver. Id. ___ We have combed Lema's pro se filings for other assignments of ___ __ error; none merit discussion. Affirmed. Affirmed. ________ 20