Russell H. WOGAN, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. No. 93–225–P–C.

United States District Court,
D. Maine.

March 8, 1994.

Richard S. Emerson Jr., Childs, Emerson, Rundlett, Fifield & Childs, Portland, ME, for petitioner.

Jonathan A. Toof, Asst. U.S. Atty., Portland, ME, for U.S.

*MEMORANDUM OF DECISION AND ORDER GRANTING PETITIONER'S MOTION TO CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255*

GENE CARTER, Chief Judge.

Petitioner Russell Wogan, who is serving an eighty-seven-month sentence in a federal penitentiary for conspiracy to possess, distribute, and aid and abet in the distribution of heroin, calls on this Court to correct his sentence pursuant to section 2255, based on the claim of ineffective assistance of counsel in violation of the Sixth Amendment. 28 U.S.C. § 2255. Wogan was apprehended on July 24, 1990, along with co-conspirator Daniel Casale, for illegal possession of 5.75 grams of heroin. Both men pled guilty to the drug charges but were sentenced separately, with Casale appearing first before this Court on November 21, 1990. During Casale's sentencing hearing, the Assistant United States Attorney attempted, but failed to prove, that the scope of the conspiracy under the Sentencing Guidelines included "relevant conduct" involving 750 grams of heroin. U.S.S.G. § 1B1.3(a). This Court found instead, by a preponderance of the evidence, that the conspiracy involved 10.19 grams,[1] and Casale was then sentenced, *inter alia*, to

---

1. The 10.19–gram figure included the 5.75–gram "offense conduct" plus a 4.44–gram finding for "relevant conduct."

a term of incarceration of twenty-seven months under the Sentencing Guidelines, taking into account acceptance of responsibility and his Criminal History Category. Transcript of Sentencing Hearing ("Trans. Casale Sentencing") Criminal No. 90–00042–P–01 at 60–63 (Nov. 21, 1990).

A sentencing hearing was held for Petitioner Wogan on January 3 and 24, 1991, during which the Assistant U.S. Attorney presented additional evidence regarding an alleged 750–gram conspiracy. Wogan's attorney, William McCandless ("Counsel"), offered in evidence the transcript from the Casale sentencing hearing as the sole basis for a defense.

On at least two occasions, Wogan had expressed to Counsel that the 750–gram allegation was exaggerated and erroneous and indicated that he would testify in order to contest the alleged scope of the conspiracy. Transcript of Evidentiary Hearing on Section 2255 Motion ("Trans. § 2255 Hearing") at 22–24 and 59–62 (Nov. 30, 1993). Counsel advised Wogan not to take the stand because this Court had indicated that it would make a relevant conduct finding of 750 grams but would ultimately depart downward to twenty-seven months, pursuant to section 5K2.0 of the Sentencing Guidelines, in order to equalize the sentences between the co-conspirators. U.S.S.G. 5K2.0 and 18 U.S.C. § 3553(b).[2] Counsel never informed Wogan of the risks he faced by not testifying or presenting other evidence to contest the relevant conduct finding in the event of an appeal. Trans. § 2255 at 25 and 29. In other words, Wogan was not informed that on an appeal by the Government, the favorable downward departure might be overturned and Wogan would then be bound by the Court's "relevant conduct" finding which could not be challenged directly or collaterally.

After this Court issued its sentencing order, the Government appealed, challenging the downward departure. The Court of Appeals for the First Circuit ruled that the downward departure was inappropriate and remanded the case to this Court with instructions that Wogan be sentenced in accordance with its 750–gram "relevant conduct" finding. *United States v. Wogan*, 938 F.2d 1446 (1st Cir.1991), *cert. denied* — U.S. —, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991) (No. 91–639). Petitioner was then resentenced to, *inter alia*, an eighty-seven-month term of incarceration. This represented an additional five years of incarceration over the term imposed on his co-conspirator. The sentence was affirmed on appeal. *United States v. Wogan*, No. 91–2007, 1992 WL 197368 (1st Cir. Aug. 14, 1992).

## I. FINDINGS OF FACT

### A. Allegation of 750–Gram Heroin Conspiracy

The Presentence Reports of both Wogan and co-conspirator Casale alleged that the two men handled 750 grams of heroin during the course of their conspiracy. This estimate was derived from information provided by heroin users in the Portland, Maine area whom the two men had supplied. *See* Presentence Reports of Russell Wogan and Daniel Casale ("Presentence Reports") Criminal Nos. 90–00042–P–02 and 90–00042–P–01 at ¶ 12. According to the reports, prepared by United States Probation Officer Donald Hawley, the information indicated that Wogan and Casale had been traveling daily from Maine to Massachusetts, purchasing about one hundred bags per trip, and that the two men had engaged in their conspiracy from February 1, 1990, until July 24, 1990. Based on these allegations, the probation office multiplied 500 bags per week by the length of the conspiracy, 25 weeks, to arrive at the 750–gram figure.[3] Presentence Reports at

---

**2.** Title 18 U.S.C. § 3553(b) provides that a district court may depart from the guidelines if it:

finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

*See* 18 U.S.C. § 3553(b). This statutory provision is implemented by U.S.S.G. § 5K2.0.

**3.** A bag of heroin, on the evidence, weighs approximately .06 grams. The precise calculation yielding the 750–gram allegation was 500 bags/week × weeks = 12,500 bags × .06 gms. = 750 gms.

¶ 13. Officer Hawley also indicated in the report that when he met with Wogan and informed him of the 750–gram estimate, Wogan indicated that such a figure was "quite likely." *Id.* at ¶ 22.

### B. Casale's Sentencing Hearing

At Casale's sentencing hearing, the Assistant U.S. Attorney attempted to prove the 750–gram figure by presenting two of the witnesses who had provided statements relied on in the Presentence Reports. On the stand both of these witnesses, Walter Slusser and Mary Ann Slusser, indicated that their statements with respect to the amount of heroin transported by Wogan and Casale were based solely on hearsay; that they became aware of the two men working together sometime during the month of March, not in February; and that they purchased eight to ten bags a week from them during the months of March and April for a total of 74 bags, not 500 bags as earlier suggested by Mary Ann Slusser to a Portland police detective. Trans. Casale Sentencing at 13, 15–16, 42, and 45. The Assistant U.S. Attorney then called Chief Probation Officer Henry Milburn to the stand. Milburn supervised Donald Hawley, the probation officer who prepared the Presentence Reports and who spoke directly with Wogan. Milburn testified to Hawley's account of his conversation with Wogan, during which Wogan allegedly confirmed the 750–gram figure. *Id.* at 55. The Government did not call Hawley as a witness.

In addition to evidence generated during cross-examination of the Government's witnesses, Casale's attorney called William McCandless to the stand. McCandless, who at the time represented Wogan, testified with respect to Wogan's version of his comment to the probation officer. According to McCandless, Wogan did not admit to the 750–gram finding but merely said the figure was "not surprising." *Id.* at 58–59. McCandless testified that Wogan explained his comment by telling him that "in light of all of the allegations of other witnesses that I have heard on the street and from other persons, I'm not surprised." *Id.*

In making its findings, this Court determined that the Government failed to prove by a preponderance of the evidence relevant conduct involving 750 grams of heroin and that the most reliable testimony on the issue of the quantity of drugs transported by Casale, during his conspiracy with Wogan, came from Walter and Mary Ann Slusser. *Id.* at 60–62. Based on their testimony, the Court calculated that 4.44 grams constituted the relevant conduct of the conspirators which, when added to the 5.75 grams making up the offense level, yielded a total drug quantity of 10.19 grams of heroin. Taking other factors into account, including Casale's criminal history, the Court sentenced him to twenty-seven months of incarceration. *Id.* at 61–62 and 73–74.

### C. First Presentence Conference, Counsel's Meeting with Wogan, and the Sentencing Hearing

On December 17, 1990, this Court held the first of two Presentence Conferences to discuss Wogan's case with the U.S. Assistant Attorney and Counsel. During this first conference, both attorneys agreed to admit the previous testimony of the Slussers into the record, and Counsel indicated that he would also introduce the full transcript of Casale's sentencing hearing along with Counsel's affidavit stating that he informed Wogan, prior to meeting with the probation officer, not to discuss the relevant conduct allegation. Transcript of Presentence Conference ("Trans. Conference 1") at 4–5 (Dec. 17, 1990). The Government indicated that it would again attempt to prove relevant conduct involving 750 grams of heroin, this time by calling probation officer Hawley to testify directly about his conversation with Wogan. *Id.* at 2 and 4. The Court indicated that the Government would have to make a strong showing in order to convince it to deviate from the earlier finding. *Id.* at 2 and 5. Nonetheless, the Court called on both attorneys to "put on your respective positions with vigor and determination and all of the evidence you can muster." *Id.*

Counsel met with Wogan following this conference. During their meeting, Wogan informed Counsel that the 750–gram allega-

tion was "very exaggerated." Trans. § 2255 Hearing at 59. Wogan testified that he also informed Counsel that he would be willing to take the stand in order to deny that he trafficked in 750 grams of heroin. Wogan also wanted to testify to clarify that he commented to Hawley, "I'm not surprised," in reference to the fact that he wasn't surprised that unindicted co-conspirators would testify to the 750–gram figure, given their lack of credibility. He also wanted to state for the record that he was out of the country for the entire month of February and did not meet up with Casale until sometime in mid-March.[4] *Id.* at 15, 22–23, 32, and 59–61. Counsel informed Wogan that he had a right to testify which only Wogan could waive. *Id.* at 70–71. But he advised Wogan not to take the stand because he was quite sure that the transcript of Casale's sentencing hearing would be an adequate basis for the Court to reach the same conclusion as it reached in Casale's case (*i.e.,* that 10.19 grams was the total amount of heroin involved in the conspiracy). *Id.* at 22–23 and 34–35.

The Court began Wogan's sentencing hearing on January 3, 1991, during which the Government called probation officer Hawley to the stand. Hawley testified that when he confronted Wogan with the allegation that 750 grams were involved in the conspiracy, Wogan replied, "that's quite likely." Transcript of Sentencing Hearing ("Trans. Wogan Sentencing 1"), Criminal No. 90–00042–P–02 at 12–13 (Jan. 3, 1991). Hawley said he tried to press Wogan further to get a definite "yes" from him with respect to drug quantity, but all Wogan would say is "quite likely." *Id.* Hawley testified that he understood Wogan's comment to be a confirmation of the 750–gram figure. *Id.* at 17–19. Cross-examination established that in Hawley's opinion, based on many years of experience, Wogan clearly understood the question and his comment constituted an admission of the 750–gram figure. *Id.* at 15–16. Wogan did not

testify. The hearing was continued to January 24, 1991.

### D. Second Presentence Conference, Counsel's Meeting with Wogan, and Determination of Sentence

The Court met in a further Presentence Conference with counsel for both parties on January 16, 1991, to discuss issues to be resolved at Petitioner's final sentencing session. During this meeting, the Court indicated that Hawley's testimony was significant enough, in the Court's view, to support a relevant conduct finding of 750 grams. Transcript of Presentence Conference ("Trans. Conference 2") at 12–13 (Jan. 16, 1991). However, the Court indicated that the resulting differential in sentencing between the co-defendants based on this higher finding would "foster an unconscionable disparity" and run afoul of the fundamental purpose of the Sentencing Guidelines to generate consistency in sentencing. *Id.* at 12–14. The Court indicated that it had tentatively decided that this consequent disparity in sentencing would constitute a mitigating circumstance supporting a downward departure to equalize Petitioner's sentence with that of Casale's, pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b). Trans. Conference 2 at 13–15.

The Court stated that the sentencing disparity was a "very troublesome issue," *id.* at 12; indicated that counsel could persuade the Court otherwise through further evidentiary showing, briefing, or legal argument, *id.* at 14–15; and specifically asked Defense Counsel if he planned to present any further evidence to the Court. Counsel responded, "No your Honor, under the circumstances." *Id.* at 16. The Court also indicated that its inclination to depart downward, imposing a twenty-seven-month sentence on Wogan, might be reversed on appeal, stating, "if the Court of Appeals tells me to do it differently, the responsibility would be on them. I will

---

4. Petitioner's absence from the country during the month of February would have been relevant to undermining the Government's 750–gram figure which was calculated based on the presumption that he was involved in the daily transport of heroin beginning on February 1, 1990. According to the Government's calculations, about 120 grams were trafficked during the month of February when Petitioner alleges that he was absent from the country, and another 60 grams was trafficked during the first two weeks of March, before Petitioner alleges that he met up with Casale and the conspiracy officially began.

not do it [increase Wogan's incarceration term above that of Casale's] in the first instance." *Id.* at 15.

Following this conference, Counsel met again with Wogan and informed him that the Court would make a finding of 750 grams but depart downward from the applicable Guidelines range for a term of incarceration to equalize Wogan's sentence with that of Casale's. Trans. § 2255 Hearing at 61. Wogan again informed Counsel that he was dissatisfied with the 750–gram finding and that he wanted to testify. *Id.* at 62. According to Wogan's uncontested testimony, Counsel said something to the effect that Wogan should "'let a sleeping dog lie.' In other words, there was *no reason to [testify]*, even though I disagreed. We eventually came to the same sentence as Mr. Casale had." *Id.* at 24 (emphasis added).

Counsel did not inform Wogan that the Government could appeal the downward departure, nor did he inform Wogan that he could be resentenced on the basis of the 750–gram finding if the appeal were successful. *Id.* at 25. Wogan then decided not to take the stand based "[o]n the advice of my attorney that we had achieved the same sentence as my co-defendant which was 27 months ... on his advice [and] on the very limited knowledge of the legal process I had." *Id.* at 29–30.

In the final sentencing session on January 24, 1991, this Court acted in accordance with its inclination, as expressed earlier to counsel, by making a relevant conduct finding of 750 grams but issuing a downward departure to twenty-seven months in order to reduce the disparity in sentencing between the co-defendants.

### E. Appeal of the Downward Departure and Wogan's Resentencing

The Government appealed Wogan's sentence on the issue of the downward departure. Counsel, who represented Wogan on appeal, argued in favor of the departure but did not cross appeal to contest the relevant conduct finding of 750 grams. In a footnote, Counsel wrote:

> In opposing the Government's appeal, the appellee's focus is properly on the district court's decision to depart from the guidelines. The appellee, who took exception to the factual findings below, does not concede that Judge Carter made a correct "offense conduct" finding in this case. So as not to detract from the necessary focus of the instant appeal, in spite of his contention that the court's finding was clearly erroneous, *the appellee will save this argument perhaps for another day.*

Appellee's Brief at 23, *United States v. Wogan*, 938 F.2d 1446 (1st Cir.1991) (emphasis added). The Court of Appeals for the First Circuit vacated Petitioner's sentence, holding that "the thrust toward equalization of sentences within a single case is not, and by itself cannot be, 'an aggravating or mitigating circumstance' as that phrase was employed by Congress in enacting 18 U.S.C. § 3553(b)." *Wogan*, 938 F.2d at 1449.

On remand before this Court for resentencing in accordance with the 750–gram finding, Counsel argued that the Court was precluded, by the doctrine of collateral estoppel, from relitigating the issue of relevant conduct and was essentially "stuck then with the factual findings it made in the Casale case." Transcript of Resentencing Hearing, Criminal No. 90–00042–P–02 at 3–4 (Sept. 16, 1991). This Court then informed McCandless that:

> the estoppel argument has been waived ... [T]here was no claim of that doctrine [nor of its] application at the time of the original sentencing hearing, and Mr. Hawley took the stand and that constituted a waiver at the trial level. And if it was not a waiver at the trial level, then the obligation of the defendant to raise all issues on appeal that were then extant within the record, required that the issue be specifically postured to the Court of Appeals for adjudication ... Therefore, it is too late now to raise that issue in these proceedings for resentencing.

*Id.* at 8.

Wogan was resentenced to, *inter alia*, an eighty-seven-month term of incarceration representing the low end of the applicable Guidelines range. *Id.* at 11. On appeal of the remanded sentence, Wogan was repre-

sented by new counsel who attempted to contest this Court's relevant conduct finding of 750 grams. The Court of Appeals for the First Circuit indicated that those arguments had been waived because Wogan's former Counsel had failed to raise them on the initial appeal:

> [W]e have held that '[i]t is not open to question that an appellee ... should, in supporting a judgment below, challenge *any* finding or conclusion or absence thereof that [appellee] deems error as revealed by the record.'

*United States v. Wogan,* No. 91–2007, slip op. at 8, 1992 WL 197368 (1st Cir.1992) (citation omitted). Having waived the arguments on appeal, the relevant conduct finding of 750 grams became established as "the law of the case," and Wogan lost the right to challenge the drug quantity finding. *Id.* at 8–9.

## II. DISCUSSION

 The standard for assessing whether counsel's representation was so ineffective that it amounted to a violation of the Sixth Amendment was announced by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a claimant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," outside of "the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688–89, 104 S.Ct. at 2064–65. Second, a claimant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. After careful review of the record, *this Court finds that Counsel did not inform Petitioner of the negative consequences of not taking the stand to testify in the event of an appeal at his sentencing hearing and hence, impeded his client from making a "meaningful" and voluntary waiver of his right to testify. United States v. Poe,* 352 F.2d 639, 640–41 (D.C.Cir.1965).

Counsel's conduct, in this regard, fell below an objective standard of reasonableness, depriving Petitioner of effective assistance of counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65. This Court finds further that Counsel's failure to adequately apprise Wogan of his right to testify caused Petitioner prejudice such that but for counsel's error, the result of the sentencing hearings would have been different. *Id.* at 694, 104 S.Ct. at 2068.

### A. Failure to Ensure Wogan's Waiver of Right to Testify was Knowing and Voluntary

In *Lema v. United States,* the Court of Appeals for the First Circuit assumed, without deciding, that "the constitutional right to testify in one's defense is 'fundamental,' and, as such, may not be waived by counsel on the defendant's behalf, regardless of the soundness of any strategic or tactical considerations." *Lema,* 987 F.2d 48, 52 and n. 3 (1st Cir.1993) (listing Supreme Court decisions recognizing, in dictum, right to testify as fundamental and cases by various circuit courts of appeal holding the same). While Counsel in Wogan's case advances a strategic reason for advising Petitioner not to testify,[5] he also had a "primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague,* 953 F.2d 1525, 1533 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992); *see also Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65. That advice was critical because a defendant cannot be found to have relinquished a constitutional right unless the waiver is made intelligently, voluntarily, and knowingly. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Foster v. Delo,* 11 F.3d 1451, 1457 (8th Cir.1993); *Lema,* 987 F.2d at 52–53.

---

**5.** McCandless testified that he advised Petitioner not to take the stand because he was afraid that Petitioner would admit to more than 10.19 grams of heroin, which was the finding in Casale's sentencing hearing, and that such an admission would jeopardize the Court's decision to depart downward, giving Petitioner the same sentence as that received by his co-conspirator. Trans. § 2255 Hearing at 91. Petitioner, himself, testified that he would admit to involvement in trafficking anywhere from 10 to 50 grams of heroin during the conspiracy. *Id.* at 52 and 56.

Case law involving whether a defendant "voluntarily" waived his right to testify generally requires substantial evidence of coercion indicating that counsel overcame the client's will to support a finding of ineffective assistance of counsel.[6] In cases like this one, however, where the issue is not coercion[7] but whether defendant was provided with sufficient information to make a "meaningful" waiver, the inquiry must focus on "the competence and soundness of defense counsel's tactical advice." *Lema,* 987 F.2d at 53. Where defendants have clearly acceded to counsel's advice but counsel was later found to have misinformed defendants with respect to the consequences of taking the stand, courts have found ineffective assistance of counsel. *See, e.g., Foster,* 11 F.3d at 1457 (holding that counsel "impeded an informed decision whether to waive or invoke a fundamental constitutional guarantee" where counsel misinformed defendant of the risks and failed to inform defendant of the benefits of testifying at the penalty phase of a capital murder trial); *Blackburn v. Foltz,* 828 F.2d 1177, 1182 (6th Cir.1987), *cert. denied,* 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988) (holding that defendant was deprived of meaningful opportunity to decide whether to testify where counsel misinformed defendant about the Government's use of prior convictions if defendant took the stand); *United States v. Poe,* 352 F.2d 639 (D.C.Cir. 1965) (holding that defendant was deprived of a fair trial where he waived his right to testify based on counsel's misinformation that the Government could use inadmissible statements to impeach his testimony). *But see, e.g., Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.1990), *cert. denied, Rogers–Bey v. McGinnis,* 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990) (holding that, while counsel's advice not to testify was based in part on the erroneous belief that a prior conviction could be used to impeach defendant, advice was still reasonable and did not impede meaningful waiver where counsel advanced other reasonable grounds, such as belief that the prosecution had failed to prove its case, in advising defendant not to testify).[8]

In this case, Counsel advised Wogan not to testify, assuring him that he would receive the same sentence as his co-conspirator. Trans. § 2255 Hearing at 24 and 29–30. Wogan waived his right to testify based on this advice, without any knowledge that the Government had the right to appeal the downward departure and that if the appeal

---

**6.** In *Lema,* for example, the Court of Appeals for the First Circuit rejected an ineffective-assistance-of-counsel claim where courtroom observers witnessed the defendant disagreeing and arguing vigorously with his attorney over the issue of whether he should testify at trial. *Lema,* 987 F.2d at 50–51. The record further indicated, however, that the defendant eventually acceded to counsel's advice, deciding that too much was at stake if he took the stand. *Id.* at 53. The Court of Appeals for the First Circuit rejected the ineffective-assistance-of-counsel claim, holding that defendant knowingly and voluntarily, even if reluctantly, waived his right to testify and that his decision to waive that right had not been coerced by counsel. *Id. See also Teague,* 953 F.2d at 1529 and 1534–35 (holding that where counsel advised defendant not to take the stand based on a careful assessment of his potential as a witness and believed that defendant assented to her recommendation, defendant cannot later successfully claim ineffective assistance of counsel even though he called counsel immediately after trial indicating that he never understood that he had relinquished the right).

**7.** Wogan has not argued that he was coerced into waiving his right to testify and has admitted that he did not pose strong resistance to McCandless's advice, opting to go along with him because McCandless told him he would receive the same sentence as his co-conspirator. Trans. 2255 Hearing at 29–30.

**8.** *Rogers–Bey* can be distinguished from the instant case because defendant testified in *Rogers–Bey* that his attorney told him not to testify because the prosecution had failed to prove guilt beyond a reasonable doubt. *Rogers–Bey,* 896 F.2d at 283. The Court of Appeals for the Seventh Circuit reasoned that the fact that defendant's trial counsel also based his advice on an erroneous belief that certain prior convictions could be used to impeach defendant was not sufficient for a finding of ineffective assistance of counsel barring a meaningful waiver, where defendant was provided with an otherwise sound basis for waiving his right to testify. *Id.*

By contrast, in this case, Wogan testified that Counsel told him there was no need to testify because he would get the same sentence as Casale. Trans. 2255 Hearing at 24. Counsel's error of not informing Wogan of the consequences of appeal did not provide an independent basis for his advice to Petitioner, as in *Rogers–Bey,* but was imbedded in his advice, providing Petitioner with a faulty foundation for deciding whether or not to exercise his constitutional right.

were successful, he could be resentenced in accordance with the 750–gram finding. As Wogan testified, he decided not to take the stand based "[o]n advice of my attorney that we had achieved the same sentence as my co-defendant which was 27 months ... on his advice [and] on the very limited knowledge of the legal process that I had." *Id.* at 29–30.

Given these facts, the Court finds that Petitioner was not provided with an adequate basis for making a meaningful and voluntary waiver of his right to testify. *See Poe,* 352 F.2d at 640. The case law indicates that Counsel had a clearly defined duty to inform Wogan of the benefits of the downward departure and the risk of jeopardizing the departure if he testified, *to be weighed against* the risk of not taking the stand *in the event of a successful appeal by the Government.* By not informing Wogan of the negative consequences that might accompany a decision not to testify, Counsel misrepresented the realities of his case and failed to properly protect Wogan's exercise of a fundamental constitutional right. This Court finds that Counsel's conduct, in this narrow factual context of failing to advise Wogan of the potential adverse consequences of not challenging the evidentiary basis of the "relevant conduct" finding by testifying himself, fell below the norms of effective representation in that defense counsel bears the "primary responsibility for advising the defendant of his right to testify or not to testify" and of "the strategic implications of each choice." *Teague,* 953 F.2d at 1533.

The Court does not consider, however, that McCandless's reason for counseling Wogan not to testify at the first hearing to be, in and of itself, an unreasonable strategic judgment. The whole end game at that point, from the perspective of the defense, hinged on protecting from erosion the Court's inclination to depart downward and sentence Wogan on the basis of the drug quantity the Court had found in Casale's case. It is now clear that Wogan would have given by his testimony an evidentiary basis for a larger drug quantity finding than the Court had previously made in the case of Casale. The preservation of the defense strategy of getting Wogan the same sentence Casale had received would

have been in peril the moment Wogan took the stand.

The deficit in McCandless's "sleeping dog" strategy is that he treated what is only a rule of thumb as an immutable axiom. He neglected to consider that every now and again a sleeping dog will rise and bite—where it hurts. He failed to perceive that even if this Court was not the·hound to be feared, the Court of Appeals was a restlessly somnolent canine-in-waiting and that it had not yet slept on the issue of the downward departure.

The strategy, even afflicted with that deficit, however, is not so deficient as to constitute ineffective assistance of counsel. Defense counsel is not required to devise a perfect or even winning strategy, nor is he required to accurately predict all of the twists and turns on the road to a selected strategy's successful realization. Certainly McCandless is not to be held accountable as ineffective for failing to accurately predict anything so shrouded in obscurity as how the Court of Appeals might judge the validity of the downward departure.

As reasonably effective counsel, he was charged, however, to recognize that he could not with immutable safety make that prediction, that that very fact was a significant factor to be weighed in deciding whether to pursue the strategy of Wogan not testifying, that the decision was Wogan's to make, and that Wogan was entitled to know the downside risk *if he did not testify.* Thus, the failure of performance on McCandless's part was not the framing of the strategy but simply the failure to apprise Wogan of the down-side risk before, or when, he acceded to counsel's advice. The issue here is whether Wogan acceded knowingly and voluntarily as an act of waiver of a fundamental right that is, by established legal tenets, to be recognized as valid.

It is clear that without knowing of the down-side risk embedded in the strategy, which reasonable counsel should have perceived and called to this client's attention, and which, without doubt, McCandless did in fact see himself, Wogan did not, and could not, execute a knowing waiver of his right to testify. The deprivation of the opportunity to do so is crucial in terms of prejudice, as is

shown below, and its cause is, alone, McCandless's failure to apprise Wogan of the risk on appeal that could be the undoing of the defense strategy.

### B. Counsel's Errors Resulted in Prejudice

Having demonstrated that Counsel made errors in representation falling below an objective standard of reasonableness, Petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The Supreme Court in *Strickland* defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Wogan notes that the balance of evidence regarding the 750–gram finding was extremely close in his sentencing hearing. Petitioner's Memorandum in Support of § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Docket No. 1) at 10. As this Court noted on the record, the finding rested primarily on probation officer Hawley's testimony that Wogan's statement to him was an admission. Sentencing Hearing (Sentencing Hearing 2) Criminal No. 90–00042–P–02 at 33–34 (Jan. 24, 1991). On the other side of the balance was testimony by unindicted co-conspirators at Casale's hearing, believed by the Court in sentencing Casale, who contradicted their earlier statements to police that Casale and Wogan had trafficked in 750 grams of heroin. These witnesses indicated, instead, that they had no reliable basis to assert that the conspiracy trafficked anything more than 4.44 additional grams of heroin. Trans. Casale Sentencing at 13, 16, 42 and 45.

But for Counsel's advice that he would receive the same sentence as Casale, Wogan testified that he wanted to take the stand at his hearing. Trans. § 2255 Hearing at 29–30. Had Petitioner taken the stand, he would have testified to the following:

(1) He was not involved in trafficking 750 grams of heroin; this allegation was "grossly overstated." Trans. § 2255 Hearing at 16, 32, and 59.

(2) He had been informed by Counsel not to discuss the relevant conduct allegation with probation officer Hawley. *Id.* at 52. When Hawley confronted him during the meeting with the 750–gram allegation based on statements of unindicted co-conspirators, Petitioner responded that "I'm not surprised," referring to the fact that he wasn't surprised, given the lack of credibility of the co-conspirators and what they stood to gain, that they would allege that he had been involved in trafficking such a large amount of heroin. *Id.* at 15, 41–42, and 59–61.

(3) He had been out of the country until the end of February and did not link up with Casale until sometime in mid-March. *Id.* at 27 and 54–55.[9]

(4) While unable to indicate exact figures, Petitioner would probably have testified on that he was involved in trafficking anywhere from 10 to 50 grams of heroin. *Id.* at 52 and 56.

This Court found Wogan's testimony regarding the above-stated facts to be credible during the evidentiary hearing held on his section 2255 motion. 28 U.S.C. § 2255. Consequently, the Court finds that there is a reasonable probability that Wogan's testimony would have altered the relevant conduct finding, perhaps resulting in a finding of as little as 50 grams.[10] More specifically, there

---

9. Wogan's passport and his testimony as to the timing of his return to the country and hooking up with Casale thereafter is supported by the testimony of the Slussers at Casale's sentencing hearing. Their testimony indicated that they did not begin receiving heroin from Wogan and Casale until mid-March, Trans. Casale Sentencing at 34–35; that Petitioner did not appear on the scene until sometime in March, *id.* at 45; and that Walter Slusser did not join the co-conspirators until sometime in March when he accompanied them on one heroin-buying trip to Massachusetts, *id.* at 10. As indicated in n. 4 *supra,*

Petitioner's testimony dating the conspiracy to mid-March would have reduced the 750–gram figure by at least 180 grams based on the Government's calculations.

10. If the Court had concluded that the drug quantity to be used to determine the Base Offense Level was 50 grams of heroin, that finding would have dictated a Base Offense Level of Level 20 rather than a Level 30 dictated by a finding of 750 grams. With the two-point reduction for acceptance of responsibility pursuant to section 3E1.1(a), the Defendant's Total Adjusted

is a reasonable basis to believe that this Court would have placed significant weight on Petitioner's testimony clarifying his statement to the probation officer and contradicting officer Hawley's testimony that Wogan's statement to him was a confirmed admission of fact. Further, Wogan's testimony regarding his absence from the country and dating the beginning of the conspiracy at mid-March would have cast additional doubt on the Government's 750–gram allegation.[11] Lastly, there is a reasonable probability that this Court would have placed more weight on Petitioner's admission on the stand to trafficking in up to 50 grams of heroin than on the alleged 750–gram figure.

This Court finds that Petitioner has successfully demonstrated that he failed to testify in his sentencing hearings due to his Counsel's failure to acquaint him with the downside risk inherent in his not testifying to challenge the 750–gram drug quantity alleged by the Government. Further, the Court has little doubt that Petitioner's testimony with respect to the critical relevant conduct allegation would have altered the result of those sentencing hearings. As the Supreme Court wrote in *Strickland,* "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063. The probability that Petitioner's testimony would have substantially altered this Court's fact-finding resulting in a finding of a drug quantity of 50 grams at most, a magnitude of fifteen times less than the 750–gram finding, is sufficient to undermine confidence in the outcome of the sentencing proceedings and to justify granting Petitioner's motion to modify his sentence.

Accordingly, it is *ORDERED* that Petitioner's motion pursuant to section 2255 that his sentence be modified based on his claim of ineffective assistance of counsel be, and it is hereby, *GRANTED.* 28 U.S.C. § 2255. The sentence previously imposed is hereby *VACATED.* It is *FURTHER ORDERED* that a new sentencing hearing be speedily scheduled at which the only issue of fact to be relitigated is the determination of the drug quantity to be used to determine the applicable Base Offense Level for computing the Guidelines range for a term of incarceration.

---

Offense Level would be Level 18. Defendant's Criminal History Category would have remained at Category II. These predicates would have yielded a Guideline range of 30 to 37 months for a term of incarceration. This compares with the Guideline range of 87 to 108 months based on the finding of 750 grams of heroin. Defendant's testimony clearly could have significantly reduced his exposure to incarceration.

11. As noted in the Findings of Fact section, page 4 *supra,* the 750–gram allegation was based on a straight calculation of 500 bags a week multiplied by 25 weeks, with the conspiracy alleged to have begun by February 1st. Presentence Report at ¶ 13. Further, the 500–bag–a–week estimate was based on the statements of unindicted co-conspirators. *Id.* at ¶ 12. Two of the witnesses who had provided this information testified at Casale's sentencing hearing and indicated that they had no direct knowledge that Petitioner and Casale transported 500 bags a week and that their earlier allegations were solely based on hearsay. *See* Trans. Casale Sentencing at 13, 16, 42 and 45.