Dwayne OWENS, Petitioner,

v.

**UNITED STATES of America,
Respondent.**

**No. CIV.A.01–10061–WGY.**

United States District Court,
D. Massachusetts.

Dec. 30, 2002.

Peter B. Krupp, Laurie and Krupp, LLP, Boston, MA, for Dwayne Owens, Petitioner.

Allison D. Burroughs, United States Attorney's Office, Theodore B. Heinrich, U.S. Attorney's, Boston, MA, for USA, Respondent.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

The petitioner, Dwayne Owens ("Owens"), moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence for various criminal offenses including murder, cocaine distribution, racketeering, firearm possession, and money laundering. Owens asserts eleven arguments alleging, *inter alia,* violations of his Fourth, Fifth, and Sixth Amendment rights.

## I. Background

On December 19, 1995, a federal grand jury indicted Owens for various violations of federal law.[1] The indictment generally alleged that Owens headed a cocaine distribution ring, and committed various crimes including murder in furtherance of the objects of the drug ring. On March 27, 1997, a federal jury delivered a verdict finding Owens guilty of murder, conspiracy to murder, racketeering, interstate travel in aid of racketeering, conspiracy to possess and distribute cocaine, using a firearm during commission of a violent crime, possession of a firearm while a fugitive of justice, and money laundering. On June 25, 1997, Owens was sentenced to life imprisonment on five counts and the maximum statutory sentence on all remaining counts.[2]

On appeal, Owen claimed that several motions to suppress evidence should have been granted by the Court, that there was insufficient evidence to support his RICO convictions, and that the Court issued flawed jury instructions. *See United States v. Owens,* 167 F.3d 739, 743 (1st Cir.1999). The First Circuit affirmed Owens' conviction. *Id.* at 756. Owens subsequently petitioned the Supreme Court for certiorari, which was denied. 528 U.S. 894, 120 S.Ct. 224, 145 L.Ed.2d 188 (1999).

1. The indictment was subsequently superseded to allege violations of 18 U.S.C. § 1962(c) (RICO); 18 U.S.C. § 1962(d) (RICO); 18 U.S.C. § 1959(a)(5) (Conspiracy to murder); 18 U.S.C. § 1959(a)(1) (Murder); 18 U.S.C. § 1958 (Murder for hire); 18 U.S.C. § 1959(a)(3) (Assault); 18 U.S.C. §§ 1952(a)(2), (a)(3) (Interstate travel in aid of racketeering); 21 U.S.C. § 846 (Conspiracy to possess and distribute cocaine); 18 U.S.C. § 924(c) (Use of firearm during crime of violence); 18 U.S.C. § 922(g)(2) (Fugitive in possession of firearm); 18 U.S.C. § 922(g)(2) (Fugitive in possession of ammunition); 18 U.S.C. § 922(g)(2) (Felon in possession of firearm); 18 U.S.C. § 922(g)(2) (Felon in possession of ammunition); 18 U.S.C. § 922(g)(2) (Drug user in possession of firearm); 18 U.S.C. § 922(g)(2) (Drug User in possession of ammunition); 18 U.S.C. § 1956(a)(1)(B)(i) (Money laundering); 18 U.S.C. § 1073 (Flight to avoid prosecution); 21 U.S.C. § 841(a)(1) and 846 (Conspiracy to distribute cocaine). All court filings, except for Petitioner's Motion pursuant to section 2255 and the parties' associated memoranda of law, refer to *United States v. Owens,* 933 F.Supp. 76 (D.Mass.1996)

2. For a more exhaustive discussion of the procedural background of Owens' conviction, *see United States v. Owens,* 167 F.3d 739, 743 (1st Cir.1999).

Owens now brings a motion pursuant to 28 U.S.C. § 2255. In his motion, Owens asserts eleven principal arguments for over-turning his convictions. In summary, Owens argues that: (1) the courtroom was closed during a portion of jury selection, violating his Sixth Amendment rights; (2) the trial was tainted because the Court swore in a new Assistant United States Attorney during the trial; (3) the government violated its *Brady* obligations to Owens' prejudice; (4) Owens' murder and murder conspiracy convictions were obtained only as a result of the *Brady* violations; (5) the "murder in aid of racketeering" jury instructions were erroneous; (6) all Owens' convictions were the result of ineffective assistance of counsel; (7) the life sentence associated with the conspiracy to distribute cocaine conviction violates *Apprendi;* (8) the life sentence associated with the racketeering conviction violated *Apprendi;* (9) the life sentence associated with murder in aid of racketeering violates the due process clause; (10) the life sentence on the interstate travel in aid of racketeering violates the *ex post facto* clause; and (11) Owens' convictions were upheld as a result of ineffective assistance of appellate counsel.

## II. DISCUSSION

### A. Timeliness under 28 U.S.C. § 2255

█ As a threshold matter, the Court must assess whether Owens' petition, filed on January 11, 2001, is timely under section 2255's one year statute of limitations. The question for the Court is whether January 11, 2001, fell within one year of "the date on which [Owens'] judgment of conviction [became] final." 28 U.S.C. § 2255(1) (2002).

█ Within the context of section 2255 motions, a prisoner's conviction becomes final when the Supreme Court denies an application for certiorari. *Griffith v. Ken-*

*tucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Rogers v. United States,* 180 F.3d 349, 352 (1st Cir.1999). Thus, Owens' judgment of conviction became final on October 4, 1999, the date that the Supreme Court denied certiorari. *Owens v. U.S.,* 528 U.S. 894, 120 S.Ct. 224, 145 L.Ed.2d 188 (1999). Accordingly, any petition filed on or before October 4, 2000, would be within the statute of limitations prescribed by section 2255.

Owens' petition, filed on January 11, 2001, is therefore not within the one year statute of limitations. On August 28, 2000, however, this Court had entered an order excluding the time between April 18, 2000, and August 28, 2000, from the statute of limitations period within which Owens could file a petition pursuant to section 2255. *United States v. Owens,* No. 95–10397–WGY, slip op. (D.Mass. Aug. 28, 2000). If the Court's order excluding four months and ten days from the statute of limitations calculation is valid, then any petition filed before February 14, 2001—including Owens' motion—would be timely. The government asserts that it is not within the power of the Court to exclude time from the statute of limitations calculations. *See* Resp. to Pet'r's Mot. [Docket No. 18] at 2–3.

Irrespective of whether the Court could appropriately exercise such power, however, the Court might equitably toll the statute of limitations in an appropriate situation. While never directly deciding the issue, the First Circuit has several times indicated that Supreme Court jurisprudence potentially leaves available equitable tolling. *See Neverson v. Bissonnette,* 261 F.3d 120, 126–27 (1st Cir.2001) (discussing *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)); *Delaney v. Matesanz,* 264 F.3d 7, 13 (1st Cir.2001) (discussing *Duncan* ). In *Neverson,* the First Circuit remanded for determination

as to whether equitable tolling was required in that particular case and, if so, whether equitable tolling is generally available in habeas corpus litigation. *Neverson*, 261 F.3d at 127. This Court considered that issue on remand, and concluded both that equitable tolling was permissible and that Neverson was so entitled. *Neverson v. Bissonnette*, No. 98–11719, 1999 WL 33301665, *2–4 (D.Mass. July 26, 2002); *see also Wojcik v. Spencer*, 198 F.Supp.2d 1, 2 (D.Mass.2002) (Saris, J.) (holding equitable tolling available); *Testa v. Bissonnette*, No. CIV.A. 01–11609–DPW, 2002 WL 31194869 at *6 (D. Mass. Sept. 27, 2002) (Woodlock, J.) (same). Accordingly, equitable tolling is available and this Court need only determine whether it warrants application here.

Equitable tolling is "the exception rather than the rule," available "only in extraordinary circumstances." *Delaney*, 264 F.3d at 14. Equitable tolling is generally only available "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (citations omitted) (discussing equitable tolling generally); *Delaney*, 264 F.3d at 15 (citing *Irwin* ). Furthermore, equitable tolling will extend the statute of limitations only "for such time as [is] reasonably necessary to conduct the necessary inquiry." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990).

In this instance, Owens is without fault. If the Court improperly excluded time in this case, Owens has relied on an order of this Court to his detriment. Whatever else may be said of equitable tolling, certainly a litigant who has been led to rely on an order of the Court should be entitled to equitable tolling if, after such reliance, it is discovered that the Court lacked authority to issue such an order. This is the quintessential equivalent of filing a defective pleading during the limitations period. Accordingly, this Court holds that Owens should be granted equitable tolling of the statute of limitations.

## B. *Apprendi* Violations

Owens presses several arguments that devolve from *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The world of criminal sentencing in the United States underwent a significant sea change in 2000. The Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Considerable litigation has ensued as litigants seek to define the contours of *Apprendi*. *See, e.g., United States v. Robinson*, 241 F.3d 115 (1st Cir. 2001); *United States v. White*, 240 F.3d 127 (2d Cir.2001); *United States v. Pressler*, 256 F.3d 144 (3d Cir.2001); *United States v. Angle*, 254 F.3d 514 (4th Cir. 2001); *United States v. McWaine*, 290 F.3d 269 (5th Cir.2002); *United States v. Bandy*, 239 F.3d 802 (6th Cir.2001); *United States v. Jones*, 245 F.3d 645 (7th Cir. 2001); *United States v. Sturgis*, 238 F.3d 956 (8th Cir.2001) *United States v. Tighe*, 266 F.3d 1187 (9th Cir.2001); *United States v. Cernobyl*, 255 F.3d 1215 (10th Cir.2001); *United States v. Sanchez*, 269 F.3d 1250 (11th Cir.2001); *United States v. Samuel*, 296 F.3d 1169 (D.C.Cir.2002).

Notwithstanding the multiplicity of *Apprendi* issues, courts seem to agree that *Apprendi* is not retroactively applicable presently. In *Murray v. United States*,

Civ.A.01–11217–WGY, 2002 WL 982389 (D.Mass. May 10, 2002), this Court examined retroactivity, although the First Circuit has not yet ruled on the issue. *Gonzalez–Gonzalez v. United States*, 49 Fed. Appx. 322, 324 (1st Cir.2002) (unpublished opinion) (the retroactive applicability of *Apprendi* is "a matter on which [the First Circuit] take[s] no view");[3] *see also Sustache–Rivera v. United States*, 221 F.3d 8, 15 (1st Cir.2000) (noting that the Supreme Court did not determine in *Apprendi* whether the rule created therein would apply retroactively). This Court concluded in *Murray* that, with respect to initial petitions, the federal district courts may make a determination, applying the teachings of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as to whether a new rule of criminal procedure applies retroactively. *Murray*, 2002 WL 982389 at *4. Moreover, the Court held that *Apprendi* was not, in fact, retroactive. *Id.* at *8; *see also Jung v. United States*, 2002 WL 342673 (D.Mass. Feb.27, 2002) (O'Toole, J.) (holding that *Apprendi* does not apply retroactively to initial petitions).

■ The principles established by *Apprendi* do not apply to those individuals whose convictions became final prior to the issuance of the *Apprendi* opinion. In this case, Owens' conviction became final when the Supreme Court denied his petition for certiorari in 1999. *Apprendi* was decided in 2000. Thus, Owens cannot complain that his conviction is infirm because of alleged *Apprendi* violations.

■ Owens argues that this Court's decision in *Murray* leaves open the question of whether *Apprendi* ought apply retroactively to petitioners whose convictions became final within one year prior to the decision in *Apprendi*. In other words, Owens argues that the special class of individuals whose convictions became final prior to the Supreme Court's decision in *Apprendi*, but whose deadline for filing a timely section 2255 petition passed *after Apprendi* was decided, ought be permitted to argue *Apprendi* violations retroactively. In essence, Owens argues that the one-year limitation period on petitions contained in section 2255 effectively establishes an independent limit on retroactivity, because not only may a petitioner not argue *Apprendi* issues beyond one year subsequent to a final conviction, a petitioner may not file a petition at all. In other words, this limit on petitions obviates the need to limit retroactivity, which was the central concern in *Teague*. Accordingly, so Owens argues, there is no need to apply the teachings of *Teague*, at least with respect to claims like Owens' that were already subject to a limitations period.

The Court rejects Owens' argument. No legitimate textual or precedential basis exists on which to make such a distinction.

---

**3.** For the propriety of citing an unpublished opinion, see *Anastasoff v. United States*, 223 F.3d 898, 899–905 (8th Cir.2000) (Arnold, J.) (holding that unpublished opinions have precedential effect), *vacated as moot*, 235 F.3d 1054 (8th Cir.2000) (en banc), *Giese v. Pierce Chem. Co.*, 43 F.Supp.2d 98, 103 (D.Mass. 1999) (relying on unpublished opinions' persuasive authority), and Richard S. Arnold, *Unpublished Opinions: A Comment*, 1 J.App. Prac. & Process 219 (1999). *See also* Richard L. Neumeier, *Ethics of Appellate Advocacy: Unpublished Opinions* (Oct.2001) (unpublished seminar paper, on file with author).

The First Circuit recently amended its rule governing citation of unpublished opinions, which now permits citation of an unpublished opinion if "(1) the party believes that the opinion persuasively addresses a material issue in the appeal; and (2) there is no published opinion from this court that adequately addresses the issue." 1st Cir. R. 32.3. The First Circuit will consider the opinion for its persuasive value, but not as binding precedent. *Id.*

Moreover, Owens presents no persuasive policy reasons supporting more differential treatment for this "class" of convictions.

*Apprendi,* therefore, does not apply to his case. Accordingly, Owens' claim that three life sentences—those imposed for engaging in conspiracy to distribute cocaine, racketeering, and murder in aid of racketeering—violate *Apprendi* is denied.

### C. Owens' Right to a Public Trial

■ At the time Owens' case came to trial, it was a fairly high-profile case. Accordingly, the Court called seventy-two persons, a large venire from which to select the jury. In the former federal courthouse in the John W. McCormack Post Office and Courthouse Building, the courtroom assigned to this session (a portion of an old mail handling room) was incapable of seating more than about seventy-two prospective jurors. Obviously, therefore, every seat would be needed for the venire. In addressing this seating issue, the following exchange took place:

> THE COURT: I think then it makes sense for me to recess so you can stand easy. We're going to get 72 jurors here. That will mean we'll have a number of jurors.
>
> Now, let me ask the marshals. It looks like we're going to need all the rows except for this first row [where the defendants were seated]. Is that going to be sufficient for you?
>
> THE MARSHAL: I think so, your Honor. I just spoke to Bonnie [the courtroom deputy] about it and I was going, I'll have the officers and myself and the other fellows with me stand off to the right, make sure all the jurors get seated and have whatever spectators leave until there's a sufficient amount of room.

> THE COURT: We'll need every seat with 72 people. All right.

Jury Sel. Tr. at 4–5. No objection having been made, the Court stood in recess, any spectators were apparently [4] asked to step outside, and the seventy-two prospective jurors were seated in the rows and jury box to accommodate the entire venire. The Court commenced with jury selection and rapidly excused a number of jurors for cause. As each juror was excused, the juror left the courtroom to return to the jury pool. The record does not reflect any further discussion or action regarding seating of the public. Owens has submitted affidavits from his mother, Evelyn Bynoe, and his Uncle, William Owens, which allege that they were stopped by a uniformed officer outside the courtroom and not allowed to witness jury selection. Bynoe Aff. ¶ 3; William Owens Aff. ¶¶ 3–5. There is no evidence suggesting that any other party was denied admission to the jury selection or any other part of trial.

■ As a preliminary matter, the Government contends that the failure of both trial and appellate counsel to raise the issue of closing the courtroom procedurally defaulted the issue. Procedural default occurs when a defendant fails to raise a claim in a timely manner at trial or on appeal. *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Berthoff v. United States,* 308 F.3d 124, 127–28 (1st Cir.2002). In this case, it is uncontested that Owens has not raised this argument either at trial or on appeal. His argument about closing the courtroom, therefore, is procedurally defaulted.

Owen's claim, accordingly, is barred unless he can show cause and actual preju-

---

4. No evidence has been submitted indicating that anyone in the courtroom was actually asked to leave.

dice. Procedurally defaulted claims are barred absent a proper showing of cause and actual prejudice, or actual innocence, and the Supreme Court has held that this standard applies to section 2255 claims as well as section 2254 claims, notwithstanding Owen's lengthy discussion to the contrary.[5] *Bousley*, 523 U.S. at 622, 118 S.Ct. 1604; *Berthoff*, 308 F.3d at 127–28. Owens, therefore, must demonstrate both cause and prejudice for any claim that was not raised at trial or on direct appeal.

■■ Owens, however, cannot establish cause for failing to raise an objection at trial or on appeal. To succeed on a procedurally defaulted claim, Owens must establish that "some objective factor external to the defense" impeded his ability to construct or raise the issue at trial or on appeal. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). First, Owens alleges that he did not knowingly waive his right to a public trial, which constitutes cause. This argument, however, invokes the outdated deliberate by-pass test, which was rejected by the Court and replaced with the cause and prejudice test. *Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (rejecting the holding in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837).[6]

■■ More relevantly, Owens alleges that he did not know his relatives had been excluded and that his counsel did not know the courtroom had been closed to the public or that his relatives had been excluded. The Court rules these arguments utterly unavailing. As the transcript demonstrates, a calculated decision was made to seat each of the seventy-two prospective jurors at the cost of asking spectators temporarily to leave. The decision was made following a discussion on the record in the presence of counsel. The decision involved no secrecy. Counsel was permitted to participate in the discussion, and no objections were made, notwithstanding the explicit opportunity to do so.[7] These facts are analogous to re-reading a transcript post-trial and post-appeal and discovering admitted hearsay to which no objection was made. Initial objection at trial preserves rights; initial objection on appeal receives a deferential review; initial objection on collateral review receives a procedural default denial.

■■ Furthermore, the mere inadvertence of Owens' counsel in failing to raise the claim is not sufficient to constitute cause. "The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Puleio v. Vose*, 830 F.2d 1197, 1201–02 (1st Cir.1987)

**5.** Owens also argues that closure of his trial to the public constitutes "structural" error, for which no showing of prejudice is required. However, he confuses the relevance of structural error with its reviewability—that is, the extent to which collateral relief is available. Structural error analysis applies to proper collateral attacks, whereas Owens presents a procedurally defaulted claim.

**6.** Moreover, this conflates the issue of a knowing and voluntary waiver of a constitutional right with a demonstration of cause for failing to object. To waive the right, Owens

must have known that he was so waiving, and, uncontestedly, he did not. To raise the objection in collateral proceedings, however, Owens must have preserved his rights by not waiving them and by objecting in a timely manner. He has failed to do this.

**7.** In fact, the Court even called on one of the co-defendant's counsel who had stood, thinking an objection or question was to be presented. Jury Sel. Tr. at 5. None was made. *Id.*

(attorney error, not amounting to ineffective assistance of counsel, cannot form the basis for cause showing). Owens, however, can show nothing more than inadvertence in this case. Indeed, Owens proffers no explanation as to why three years were needed to obtain the affidavits of his mother and uncle.

 Owens' final, and related, argument avers that his ability to raise the claim was impeded by the ineffective assistance of counsel, which would establish cause. That is, Owens contends that the failure of his counsel to object to the momentary closing of the courtroom during jury selection constitutes a viable ineffective assistance claim, which, itself, would provide the external impediment necessary in the cause analysis. *Murray* 477 U.S. at 488, 106 S.Ct. 2639 ("[i]neffective assistance of counsel . . . is cause for a procedural default"). Owens' argument, however, must fail.

To establish ineffective assistance of counsel, a petitioner must show that his counsel's performance was so deficient as to fall below an objective standard of reasonable competence and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Even assuming, however, that counsel not objecting to the closure of the courtroom constitutes ineffective assistance under *Strickland,* no "closure" occurred in the instant case. First, Owens presents no evidence, nor even suggests, that the Court affirmatively excluded his mother, his uncle, or any other person from attending the trial. While the Court may have assented to the temporary clearing of the gallery to create necessary physical space for the venire, it also implicitly intended for any spectators to replace jurors in the gallery as the seats became available. This case presents the normal and utterly mundane circumstances in which all available seats were taken. Jury Sel. Tr. 5. The trial was always "public" and was never made secret.

As the Supreme Court has held, the Sixth Amendment right to a public trial is not absolute, and must on occasion yield to competing interests in the fair and efficient administration of justice. *Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In this case, the Court instituted a temporary seating restriction to charge and empanel a fair and impartial jury properly, as justice requires. Other courts have held that similar inadvertent "closures" do not rise to the level of a Sixth Amendment violation. *See, e.g., Braun v. Powell,* 227 F.3d 908, 918 (7th Cir.2000) (no Sixth Amendment issue where member of the jury venire excluded from the courtroom); *Gonzalez v. Quinones,* 211 F.3d 735, 737 (2d Cir.2000) (no Sixth Amendment issue where court officer locked courtroom doors, without knowledge of the trial judge, during the testimony of two witnesses); *United States v. Al-Smadi,* 15 F.3d 153, 154–55 (10th Cir.1994) (no Sixth Amendment problem where defendant's wife and child were unable to enter courtroom when trial lasted twenty minutes past the closing of the federal building within which the courtroom was located). Similarly, no "closure" of the trial, within the Sixth Amendment context, occurred in this case. The Court merely made a necessary accommodation demanded by the large venire pool and small courtroom—a procedure designed and implemented to protect Owens' constitutional rights. Therefore, counsel's failure to object to the temporary seating restriction cannot rise, under the Sixth Amendment, to the level of ineffective assistance to constitute cause.

Accordingly, Owens' proffered "cause" fails to excuse his procedural default. Be-

cause Owens' procedurally defaulted claim fails for lack of cause, this Court need not decide the issue of prejudice.

### D. *Brady* Violations

The Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Owens claims that several statements that were favorable to him were not disclosed to him until after the relevant proceedings occurred.

### 1. Non–Disclosure pre-*Franks* Hearing

██ Various evidence was collected from Owens' residence on Parsons Avenue, Providence, Rhode Island. This evidence was collected during a search (the "Parsons Avenue search") conducted pursuant to a search warrant that was founded, in large part, upon information supplied by an informant managed by the Boston Police Department (the "Parsons Avenue warrant"). This evidence was presented in an affidavit made by Captain Broadmeadow, a Providence Police officer ("Broadmeadow"). Owens moved to suppress the evidence before trial. As part of his argument, he argued that he ought be entitled to a *Franks* [8] hearing, wherein he would show that the search warrant affiant, Broadmeadow, knowingly lied in the affidavit. This Court held that Owens had not met his burden under *Franks* and denied his motions, both for a *Franks* hearing and to suppress. After these rulings and still

before trial, Owens came into possession of a second document, a report written by Broadmeadow (the "Broadmeadow report"). After Owens came into possession of this document, he moved the Court to reconsider its denial of a *Franks* hearing and the motion to suppress. The Court denied the renewal motion.

In the search warrant application affidavit, Broadmeadow averred that a Boston police officer had reported to him the substance of an informant's report. This informant's report identified Owens' house as "a two family dwelling near an Italian restaurant on Waterman Avenue ...." Pet'r's Mem. [Docket No. 13] at 13. In the undisclosed Broadmeadow report, dated three days after the search warrant was issued, Broadmeadow stated that the Boston police reported that the informant told them Owens "was living in East Providence in a three floor house, on the second floor, with access to the attic. The house was located between a Dunkin Donuts and an Italian restaurant on a side street, third or fourth house down on the right." *Id.* The report goes on to state that "[b]ased on this information, we located an area off Waterman Avenue between Gurney Street and Cole Street in East Providence as the most likely area fitting the description." *Id.*

Owens asserts that there is a significant difference between the two descriptions and that the difference reflects independent reconnoitering or reconnaissance of various Dunkin' Donuts–Italian restaurant locations by the Providence police, which eventually led them to the location identified in the search warrant affidavit. Thus, argues Owens, Broadmeadow lied in the search warrant affidavit, or was reckless

---

**8.** *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (holding that if the defense makes a "substantial preliminary showing that a false statement know-ingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" then a hearing ought be held).

as to the truth when he stated that the informant told them the location as averred.[9]

The failure to disclose this document, Owens alleges, constitutes a violation of the government's *Brady* obligations, as it exposed the falsity of the affiant's statements in the application for the search warrant. That is, Owens argues that, had he been in possession of the document, he would have been able to obtain a *Franks* hearing, at which he would have shown that the search warrant was issued on the basis of knowingly or recklessly false statements.[10] Accordingly, the Court would have suppressed the evidence deriving from the search and Owens would not have been convicted of many of the charges. The protracted sequence of logical suppositions required to generate this claim, however, exposes the fatal flaw in Owens' argument—Fourth Amendment claims typically are not cognizable in collateral attacks.

 Fourth Amendment exclusionary claims—claims asserting that an improper search or seizure occurred and that the evidence obtained ought have been excluded—are not cognizable in section 2254 petitions, so long as there has been an opportunity for full and fair litigation of the claim in the state courts. *Stone v. Powell,* 428 U.S. 465, 494–95 n. 37, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Neither the First Circuit nor the Supreme Court has

determined if *Stone* applies to section 2255 petitions. The First Circuit, however, has noted that "[t]he Supreme Court has hinted that *Stone v. Powell* applies to section 2255 petitions, *see United States v. Johnson,* 457 U.S. 537, 562 n. 20, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) ...." *Arroyo v. United States,* 195 F.3d 54, 55 n. 1 (1st Cir.1999). Furthermore, several district court decisions within the First Circuit have examined the issue and concluded that *Stone* applies to section 2255 petitions. *Coneo–Guerrero v. United States,* 142 F.Supp.2d 170, 176 (D.Puerto Rico 2001); *Santiago–Lugo v. United States,* 135 F.Supp.2d 142, 145 (D.Puerto Rico 2001). Several other circuits have also held that *Stone* applies to section 2255 petitions. *United States v. Cook,* 997 F.2d 1312, 1317 (10th Cir.1993); *United States v. Hearst,* 638 F.2d 1190, 1196 (9th Cir.1980); *see United States v. Schulte,* 230 F.3d 1356, 2000 WL 1390205, at *1 (4th Cir. Sept. 26, 2000); *United States v. Harrison,* No. 99–3134, 2000 WL 818815, at *1 (D.C.Cir. May 19, 2000). Having examined the arguments, this Court concludes that Fourth Amendment exclusionary claims are not subject to collateral attack where a full and fair opportunity to litigate the issue was provided during the primary proceedings.

Thus, the only issue of relevance is whether Owens had a full and fair opportunity to litigate his claims. It is undisputed

---

**9.** Interestingly, had Broadmeadow described the events as Owens asserts they occurred—that the informant generally described an area, and the police then focused in on areas that fit the description and corroborated and refined the information through observation—the affidavit would have been stronger and would have more conclusively demonstrated probable cause. Notwithstanding such effect, however, lies within search warrant affidavits cannot be tolerated, no matter the motivation or effect.

No motive for Broadmeadow's purported conduct is alleged. The Court could speculate that the police were attempting to buttress the reliability of an informant for future proceedings, but no such evidence exists and the Court declines to speculate.

**10.** Though the Court ultimately obtained all the facts through the motion to reconsider, the Court is of opinion that, as a practical matter, a much stronger case is presented when all evidence is presented simultaneously.

that Owens raised these issues before trial. The Court held a suppression hearing and ruled on the motion to reconsider in light of the newly revealed document. These rulings were ripe for appeal, and, in fact, Owens did appeal the suppression results. *Owens,* 167 F.3d at 744. Interestingly, however, Owens did not appeal the Court's denial of his motion to reconsider. On that basis, the First Circuit deemed him to have defaulted his arguments regarding the discrepancies between the search warrant affidavit and the subsequent report. *Id.* at 745 n. 3.[11] Accordingly, Owens had a full and fair opportunity to litigate the issue and thus may not raise his Fourth Amendment claim in a collateral attack.

Owens, however, styles his claim as a *Brady* claim under the Due Process Clause of the Fourteenth Amendment. Unlike many *Brady* cases wherein the suppressed evidence relates to guilt or innocence, the suppressed evidence in this case relates to the validity of a search warrant, not to Owens' actual guilt. Accordingly, this claim ought be viewed as a Fourth Amendment exclusionary rule collateral attack. Even if viewed as a classic *Brady* issue—and ignoring the fact that it is founded on a Fourth Amendment claim—Owens' claim fails.

First, it is procedurally defaulted, as he did not properly raise it on appeal. Moreover, it fails on the merits. The non-disclosed material was clearly favorable to Owens because it impeached a search warrant authorizing a search that yielded significant evidence. There is little doubt that, when evidence is pertinent to a suppression hearing, it ought be disclosed prior to that hearing. There is no dispute

that the disclosure of the Broadmeadow report did not occur prior to the suppression hearing. This, however, does not constitute a *Brady* violation.

■ A *Brady* violation occurs when the evidence suppressed is material, but the evidence in this case lacks materiality. "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). In this case the Court considered the evidence in its motion for reconsideration and held that it did not, in light of all the evidence heard at the suppression hearing, warrant reversal of its denial of either the motion to suppress or the motion for a *Franks* hearing. *Owens,* 167 F.3d at 744. The Supreme Court ruled that "[t]here must be allegations of *deliberate* falsehood or of *reckless disregard* for the truth, and those allegations must be accompanied by an offer of proof." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674 (emphasis added). The Broadmeadow report, however, does not establish that the discrepancy was anything other than an innocent mistake. Although the Broadmeadow report indicates that there may have been false statements, the offer of proof does not indicate deliberate or reckless disregard for the truth. This is not a case in which the discrepancy is so great that the Court ought infer, by the mere presence of the discrepancy, deliberate or reckless falsity. In the face of actual and timely consideration of the full record by

11. This exposes a second procedural bar to Owens' claim—he has procedurally defaulted the claim. *Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *see* discussion *supra,* part II(C). Ac-

cordingly, inasmuch as Owens asserts claims related to the denial of the motion to reconsider, such claims are barred and must be dismissed.

this Court, it is impossible for Owens to show that the report would have led to a different result. Thus, the report's suppression was not material and does not constitute a *Brady* violation.[12]

In short, however viewed, Owens' claim fails. These issues, however framed, have been litigated at trial and on direct appeal, and this Court need not reexamine them. The claim, however framed, is procedurally defaulted because Owens failed to raise it on appeal. Moreover, the claim is premised on a violation of Owens' Fourth Amendment rights and, thus, is not cognizable on collateral review. Finally, the *Brady* claim fails on the merits, notwithstanding its foundation, because the suppressed report was not material. Accordingly, Owens' claim with respect to the Broadmeadow report must be denied.

## 2. The Rodney Belle homicide

■■■ Owens was convicted of the murder of Rodney Belle (the "Belle murder") in part on the testimony of Anthony Lewis ("Lewis"), a government informant. Officer Daniel Keeler of the Boston Police Department ("Keeler") had approached Lewis while he was incarcerated in 1994 and 1995 and sought to convince him to become an informant. Trial Tr., Vol. 10 at 69. In 1996, Lewis did become an informant and subsequently provided substantial aid to authorities in prosecuting Owens. Trial Tr., Vol. 9 at 129.

At trial, Owens' counsel made a request for *Jencks* material—specifically, any records of the 1994 and 1995 meetings with Keeler. Trial Tr., Vol. 11 at 98. The government took the position that it had no records of the 1994 or 1995 meetings and, thus, could disclose no information. *Id.* Upon the filing of this habeas petition, the Court permitted limited discovery on this same issue. Again, the government has been unable to locate any information regarding those meetings.

When Lewis was sentenced for his part in the cocaine distribution scheme at the heart of Owens' conviction, however, his attorney, in arguing for a more lenient sentence, asserted that Lewis's cooperation had begun in 1994. Pet'r's Mem. at 15. He further asserted that Lewis's assistance in 1994 had led directly to solving the Belle murder case. *Id.* Based upon these assertions, Owens argues that *Jencks* material must exist and that the failure to disclose the information is a *Brady* violation, because such information would cast doubt on his role as Belle's killer.

Though this Court gave Owens additional discovery, he is still unable to provide evidence of any *Brady* material not disclosed. Accordingly, his contention must be denied. This Court declines, under the circumstances as described, to assume that such material existed.

## E. The First Degree Murder Conviction

Count nine of the superseding indictment charged Owens with first degree

---

12. The Court notes, however, that had it not been able to consider the report shortly after the hearing, it might be forced to decide that the report was material under *Brady* because the Court would then be unable to conclude that a reasoned evaluation of all the available information occurred.

Owens makes much of the fact that the motion to reconsider is subject to a more deferential standard of review than the original motion. What Owens overlooks, however, is that had he properly appealed the motion to reconsider, that information would have been part of the complete composite of information available to the First Circuit in reviewing the suppression hearing. Accordingly, Owens overlooks the fact that, absent his procedural default, he would have suffered no prejudice on appeal from the alleged *Brady* violation.

murder in aid of racketeering. The indictment charged that Owens "willfully and knowingly, and with deliberately premeditated malice aforethought and extreme atrocity and cruelty, murdered Rodney Belle ...." Superseding Indictment, count 9. The Court's jury charge, however, required only the jury to find that Owens killed Rodney Belle with malice aforethought, omitting the premeditation requirement contained in the superseding indictment. Trial Tr., Mar. 25 at 156. Owens' trial counsel did not object to the charge. As Owens' appellate counsel opined, "there was no reason for defense counsel to object to the charge given by the Court. The Court charged the jury with a lesser offense, carrying a lesser penalty under the United States Sentencing Guidelines." Pet'r's Reply Mem. [Docket No. 38] at 22. After Owens was found guilty, the Court sentenced Owens as if he had been found guilty of premeditated murder (first degree). At this point, trial counsel did object.

Here, Owens argues that his conviction of first degree murder in aid of racketeering was improper for two reasons. First, Owens alleges that the jury instruction was infirm—it allegedly charged only the elements of second degree murder, not first degree murder. Second, Owens alleges that the jury convicted him only of second degree murder and, thus, that sentencing him for commission of first degree murder violates the due process clause.

### 1. Improper Jury Instructions

■■■ Owens argues that the indictment was constructively amended to permit conviction for second degree murder (malice aforethought). The charge at issue, violation of 18 U.S.C. § 1959(a)(1),[13] imposes liability for murder in aid of racketeering. The statute is not restricted to first or second degree murder. Accordingly, inasmuch as the charged offense's elements are concerned, whether the jury found him guilty of second or first degree murder, Owens violated 18 U.S.C. § 1959(a)(1).

Accordingly, Owens' argument is not that the jury instructions did not charge each element required of the crime charged. The charge did require the jury to find each element necessary to establish a violation of section 1959, including murder. Instead, Owens argues that, because the jury charge was effectively a second degree murder charge, but the superseding indictment alleged first degree murder, the jury charge constructively amended the indictment. Such cases, so Owens argues, are *per se* violations of the Fifth Amendment, entitling him to reversal of his conviction on that count.

The government counters with three arguments. First, it argues that second degree murder is a lesser included offense of first degree murder, and thus charging Owens with first degree murder in aid of racketeering effectively encompasses second degree murder in aid of racketeering.

**13.** 18 U.S.C. § 1959: Violent crimes in aid of racketeering activity

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—

(1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both; ...

Second, the government argues that there were implied findings of premeditation because other charges, of which the jury found Owens guilty, required a finding of premeditation to murder Rodney Belle. Last, the government argues that, because the statute does not distinguish between first and second degree murder, any error caused by the jury instruction is harmless.

As a preliminary matter, however, the government again contends that Owens has procedurally defaulted the claim by not raising it at trial or on appeal. Procedurally defaulted claims are barred absent a showing of cause and actual prejudice. *Bousley,* 523 U.S. at 621, 118 S.Ct. 1604. In this case, it is uncontested that Owens has not raised this argument either at trial or on appeal. Further, he offers no colorable cause to justify his default. His argument, therefore, is procedurally defaulted.

■■■■ Owens counters that constructive amendment of an indictment is *per se* violative of the Fifth Amendment right to grand jury indictment. As such, similar to his "structural" error argument in the courtroom closure context, Owens confuses the impact of a *per se* violation and a violation to which collateral relief is available. A *per se* violation satisfies the second prong required to overcome a procedural default—it is automatically presumed to have been prejudicial. On a properly presented direct appeal, showing that a *per se* violation occurred is adequate to vacate the conviction, that is, it is not subject to a harmless error or similar review. *See United States v. Rodriguez,* 215 F.3d 110, 118 (1st Cir.2000) (considering constructive amendment on direct appeal); *United States v. Fisher,* 3 F.3d 456, 463 (1st Cir.1993) (considering constructive amendment on direct appeal). Similarly, in a properly presented collateral attack, a *per se* violation would mandate reversal of conviction. This,

however, is not a properly presented collateral attack; this is a procedurally defaulted collateral attack. Accordingly, Owens must also show cause as to why the claim was defaulted.

In his case, no such showing was made. Indeed, Owens argues that his attorney may have consciously decided not to object to the jury instruction because it appeared to charge an offense to which a lesser penalty applied. Pet'r's Reply Mem. at 22. It truly would be odd to permit a litigant consciously to elect not to object to a jury instruction, yet then be able to make that instruction the subject collateral attack. Owens' proffered cause falls short of that required. Owens has made no showing of cause and prejudice. Therefore, Owens' claim is procedurally defaulted and barred from review.

■■■■ Moreover, Owens' claim would fail on the merits. The crux of the claim is that the Court essentially dropped the portion of the charge in the indictment that alleged premeditated conduct. The Supreme Court, in rejecting its holding in *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), held that "[t]o the extent *Bain* stands for the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it, that case has simply not survived." *United States v. Miller,* 471 U.S. 130, 144, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Thus, the Court may drop from the indictment surplusage, so long as the essential elements of the crime charged remain. In this case, after dropping the premeditation requirement, the essential elements of the crime charged—murder in aid of racketeering—were still present. In other words, premeditation was irrelevant to the crime charged. Thus, the Court did not constructively amend the indictment by charg-

ing the jury only as to malice aforethought. Hence, there was no error in the jury instruction.

### 2. Sentence

██ Owens' far more compelling argument is that he was sentenced incorrectly pursuant to United States Sentencing Guideline ("USSG") § 2A1.1, rather than section 2A1.2. RICO convictions are sentenced pursuant to USSG § 2E1.1, which directs that a base offense be established of either level 19 or the level prescribed for the underlying RICO offense. Thus, in this case, the underlying RICO offense was murder. The Court, therefore, sentenced Owens pursuant to USSG § 2A1. Therein lies the dispute. The Court applied section 2A1.1, pertaining to first degree murder, not 2A1.2, pertaining to second degree murder. In applying section 2A1.1, the base offense level was 43— mandatory life imprisonment. If the Court had applied section 2A1.2 (second degree murder), the base offense level would have been 33, resulting in a sentencing range for Owens (criminal history category I) of 135—168 months (approximately 11–14 years).

In applying section 2A1.1, the Court looked to the substantive conduct underlying the offense and concluded that the sentence for first degree murder was appropriate. In doing so, the Court found by a preponderance of the evidence that Owens had committed premeditated murder. At the time, the Court's decision was in accordance with established law. In light of *Apprendi*, however, the Court's decision now appears to be error. Because the finding of premeditation exposed Owens to a higher maximum sentence, Owens was entitled to have a jury find premeditation applying the "beyond a reasonable doubt" standard.

Nevertheless, this is an *Apprendi* claim—a sentencing factor that exposed Owens to a more severe maximum penalty was found by a judge applying a preponderance of the evidence standard instead of a jury applying a reasonable doubt standard. As previously discussed, *Apprendi* claims are not retroactively applicable. Owens, therefore, is not entitled to complain of the sentence.

### F. *Ex Post Facto* Sentencing Error

██ Owens asserts that, when the Court imposed a sentence of life imprisonment for committing the crime of engaging in interstate travel to commit a crime of violence (count ten), the Court violated the *Ex Post Facto* Clause of the United States Constitution. At the time the crime was committed, the maximum penalty allowed for the commission of this offense was five years imprisonment, not life imprisonment. The Court was in error to apply the later enhanced penalty statute to Owens' crime. The Respondent concedes this argument, Resp. to Pet'r's Mot. at 54, and, therefore, the Court orders that the sentence of Owens be corrected to reflect a sentence of five years imprisonment, to run concurrently, and vacates the sentence of life imprisonment for engaging in this crime.

### G. Ineffective Assistance of Counsel

The Sixth Amendment provides an accused the right to both trial and appellate counsel. Owens alleges that his trial and appellate counsels were deficient for various reasons.

### 1. Trial Counsel

Owens must demonstrate both that his counsel's performance was so deficient as to fall below an objective standard of reasonable competence and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

Owens argues that his trial attorney failed in several respects. First, Owens argues that he was denied the opportunity to testify in his own defense because his trial counsel failed to discuss this right, or the decision not to exercise it, with him. Second, Owens argues that trial counsel failed to investigate a "key alibi witness" that would have absolved him of culpability for the Belle murder. Third, Owens argues that his counsel failed to investigate a pattern of pretextual stops in Tennessee, one of which disclosed evidence used against him. Fourth, Owens argues that trial counsel failed to explore the third prong of the good faith exception to the exclusionary rule in arguing to suppress evidence seized from the Parsons Avenue search. Fifth, Owens argues that trial counsel failed to argue that Owens was prosecuted because of bias engendered by police hatred of his uncle. Sixth, Owens argues that trial counsel was deficient in failing to press for the complete internal affairs file of one of the officers involved. Seventh, he contends trial counsel failed adequately to investigate exculpatory evidence held by a third party. Eighth, he argues that trial counsel failed to object to or move to suppress the testimony of three individuals when an objection would have been sustained. Ninth, Owens argues that trial counsel failed to object to the omission of an element from the jury charge on money laundering.

Finally, he contends that, to the extent any other arguments raised in this petition are deemed defaulted or waived because of trial counsel's actions, such blunders constitute ineffective assistance of counsel. Thus, he argues trial counsel's failure to object to jury instructions which constructively amended the murder in aid of racketeering charge is alleged to be ineffective assistance; trial counsel's failure to object to the life sentence imposed on count ten—interstate travel to commit a crime of vio-

lence—constitutes ineffective assistance; and counsel's failure to object to courtroom "closure" constitutes ineffective assistance of counsel.

### a. Owens' Right To Testify

■ Owens asserts that his trial counsel failed to inform him that he had the right to testify before the jury in his own defense. In failing so to inform him, Owens asserts that his due process rights under the Fifth Amendment and his right to counsel under the Sixth Amendment were violated. Owens contends that failing to advise him of his right to testify constitutes a forced waiver of that right under *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.1992) (en banc). Because *Teague* was cited by the First Circuit in *Lema v. United States*, 987 F.2d 48, 52 (1st Cir.1993), Owens argues that its reasoning ought be adopted by this Court.

In *Lema*, the First Circuit examined whether trial counsel persuading a defendant not to testify constitutes a valid waiver of one's testimonial right. *Lema*, 987 F.2d at 52. It assumed, without deciding, that the right to testify was personal and could not be waived by the conduct of counsel. *Id.* The First Circuit concluded that the right was not infringed by counsel's advice not to testify so long as undue coercion was not employed. *Id.* In this case, there is no allegation of coercion; Owens merely alleges ignorance of the right to testify.

■ In *Teague*, the Eleventh Circuit examined the issue of the failure to inform a defendant of his right to testify on his own behalf and concluded that, because the right is a fundamental constitutional right, it can only be waived by an " 'intentional relinquishment or abandonment of a known right or privilege.' " *Teague*, 953 F.2d at 1533 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed.

1461 (1938)). Accordingly, for a defendant to have knowingly waived his right to testify, the defendant must have known of the right. *Id.* In *Teague,* however, the Eleventh Circuit ruled that the defendant had known of the right to testify but had elected not to exercise it for tactical purposes. Nevertheless, *Teague* explicitly holds that the failure of a trial attorney to advise a criminal defendant of his right to testify constitutes a *per se* failure to meet the standard of competence required of attorneys in criminal cases. *Id.* at 1534. Other circuits examining the issue have concluded that the right is personal and requires that the defendant be informed of the right to testify. *Brown v. Artuz,* 124 F.3d 73, 77–78 (2d Cir.1997); *United States v. Pennycooke,* 65 F.3d 9, 10–13 (3d Cir.1995); *Sexton v. French,* 163 F.3d 874, 881 (4th Cir.1998); *Jordan v. Hargett,* 34 F.3d 310, 312 (5th Cir.1994), *vacated on other grounds,* 53 F.3d 94 (5th Cir.1995) (en banc); *Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.1990) *cert. denied,* 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990); *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir.1987); *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir.1993); *United States v. Ortiz,* 82 F.3d 1066, 1070 (D.C.Cir.1996).

█ Moreover, as noted in *Teague* and *Lema,* criminal attorneys are obligated to discuss the decision whether or not to testify with defendants. The American Bar Association's Standards for Criminal Justice provide:

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:

 (i) what plea to enter;

 (ii) whether to waive jury trial; and

 (iii) *whether to testify in his or her own behalf.*

Standards for Criminal Justice Standard 4–5.2(a) (2d ed.1980) (emphasis added). Model Rule for Professional Conduct 1.2(a) similarly requires consultation with a criminal defendant about whether or not to testify. Moreover, Massachusetts Rule of Professional Conduct 1.2(a) requires that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify." Mass. R. Prof. Conduct 1.2(a). This rule applies in the United States District Court for the District of Massachusetts. Local Rule 83.6(4)(B). Accordingly, attorneys are under an ethical obligation to discuss with a criminal defendant whether or not he is going to testify.

█ In the face of such persuasive authority, which in effect constitutes a uniform body of legal reasoning, and recognizing the superiority of these arguments, this Court concludes that a defendant must be advised of his right to testify for representation to meet the standard required by *Strickland.*

Owens asserts the right was never discussed with him, that he would have exercised such right had he been aware of it, and proffers an affidavit from one of his two trial counsels, which states that counsel has no recollection of discussing testifying with Owens. *Teague* and *Brown* conclude that defense counsel, not the trial court or the defendant himself (presupposing a self awareness of the right), bears the burden of advising the defendant of his testimonial right. *Teague,* 953 F.2d at 1533; *Brown,* 124 F.3d at 80. Moreover, defense counsel is under an ethical obligation to so advise a defendant. Mass. R. Prof. Conduct 1.2(a). Accordingly, this Court also concludes that defense counsel

is obligated to inform a defendant of his testimonial rights. Thus, failure to advise a client of his right to testify constitutes trial counsel competence below the standards constitutionally mandated.

Having so concluded, however, it is not necessarily true that a writ of habeas corpus ought be granted merely because a defendant was not informed of his right to testify. *Strickland* requires not only a showing of substandard performance, but actual prejudice. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. As the First Circuit noted in *Lema,* courts disagree whether denial of the right to testify is *per se* prejudicial. *Lema,* 987 F.2d at 53 n. 4. In *Brown,* the Second Circuit concluded that the defendant could not demonstrate prejudice. *Brown,* 124 F.3d at 80. In that case, the defendant had stated that the only reason he wanted to testify at trial was to point out to the jury that the prosecution failed to disprove his defense of justification. *Id.* The Second Circuit evaluated relevant state law, concluded that the defense of justification was unavailable as matter of law, and, thus, held that no prejudice occurred. *Id.*

Conversely, the Ninth Circuit concluded that "[a]s a general matter, it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt." *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.1991). Similarly, a district court concluded that "a defendant's right to testify in a criminal proceeding against him [is] so basic to a fair trial that its infraction can never be treated as a harmless error ...." *United States v. Butts,* 630 F.Supp. 1145, 1148 (D.Me.1986).

Although *Martinez* was decided in the habeas context, it was presented as a direct violation of the right to testify, not as an ineffective assistance of counsel claim.

*Butts* was decided in a post-trial motion, not in a petition for habeas corpus. Thus, neither precisely considers the denial of the right to testify in the *Strickland* context.

Nevertheless, the rationale of *Butts* and *Martinez* is overwhelming. Failure to inform a defendant of the right to testify constitutes structural error that is *per se* prejudicial. The Court cannot imagine a context wherein providing the jury with the opportunity to hear a defendant's side of the story, observe his demeanor, and make character assessments would not be critical. *Martinez* also observed that, where the defendant had been acquitted of some charges and convicted of others, the state's case was not so overwhelming as to render the testimony unbelievable as matter of law. *Martinez,* 951 F.2d at 1157. In this instance, Owens was acquitted of several charges, including another murder. Thus, this Court is in a position similar to that of the *Martinez* court, because Owens' testimony might have made the difference. Accordingly, this Court is obliged to conclude that, if Owens was not advised of his right to testify, then trial counsel's performance was constitutionally inadequate.

The First Circuit has held that petitioners bear the burden of establishing that they are entitled to a hearing by a preponderance of the evidence before the district court. *Myatt v. United States,* 875 F.2d 8, 11 (1st Cir.1989); *United States v. DiCarlo,* 575 F.2d 952, 954 (1st Cir.1978). To dismiss a section 2255 motion without a hearing, the allegations set forth by the petitioner "must be accepted as true except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Mosquera,* 845 F.2d 1122, 1124 (1st Cir.1988). A hearing is not necessary before dismissal if the motion is "conclusively refuted as to the alleged

facts by the files and records of the case." *Myatt*, 875 F.2d at 11.

Owens has not presented a sufficient proffer to establish that he was not advised of his right to testify. In this case, Owens had two trial counsel. Owens presents his own assertions, contained in his petition and signed under oath, and those of one of his two trial counsel. One counsel, Robert Sheketoff, avers by affidavit that "[he does] not remember ever discussing with Dwayne Owens that he had a right to testify and whether he wished to testify." Sheketoff Aff. [Docket no. 98].[14] His co-counsel, Miriam Conrad, also submitted an affidavit supporting Owens' various claims, although she makes no averment regarding whether Owens was advised of his testimonial right. Conrad Aff. [Docket no. 5].

As incredible as it may be that two such able and experienced attorneys could fail to discuss such an important matter with Owens, there is here no prejudice, as the Court itself informed Owens of his right to testify in no uncertain terms. In its pre-trial charge, the Court made clear that Owens had a right to testify, to call witnesses on his own behalf, and to have his two attorneys frame arguments to support him. Trial Tr., Vol. 2 at 13–14 (pre-trial jury charge). It is inconceivable that this pre-trial charge, delivered forcefully in open court before counsels' opening statements, was not understood by Owens, and

his affidavit does not controvert the matter. Given the absence of prejudice, therefore, there is no occasion to consider this issue further.

**b. Failure to Investigate Alibi Witness**

■ Next, Owens argues that trial counsel failed to investigate an alibi witness who came forward just after opening statements. Owens' uncle, former Massachusetts State Senator William Owens ("Senator Owens"), informed Owens' counsel that he had had dinner with Owens in Boston on the night of the Belle murder in Providence, Rhode Island, and thus Owens could not have murdered Belle. Second Owens Aff. [Docket No. 7] ¶¶ 5–7. Over the next several weeks of trial, Owens' trial counsel made no investigation of the report. Eventually, however, they did conduct an interview of Senator Owens and notified the Court and prosecutors of their intention to call him as an alibi witness. Conrad Aff. ¶ 8; Sheketoff Aff. ¶ 8. The Court excluded the evidence. The government, however, offered to permit Senator Owens to testify if it could conduct its cross examination following a previously-scheduled one week delay in the trial. Resp. to Pet'r's Mot. at 63. After consulting with Owens, trial counsel declined the offer. *Id.* Senator Owens' alibi testimony was never offered to the jury. Apparently, Owens' attorneys had still not conducted adequate investigation of Senator Owens testimony, and thus elected to adopt

---

**14.** The spectacle of extremely competent criminal defense counsel suggesting post-trial that they were incompetent at trial is deeply troubling. Here, of course, Mr. Sheketoff—named one of the 100 finest lawyers in Boston, Elaine McArdle, *Beyond a Reasonable Doubt*, Boston Magazine, Oct. 2002—does not go quite that far. He simply says he does not remember counseling Owens about a crucial aspect of his defense. He should remember, of course, and he ought have contemporaneous records pertaining to the matter. His affidavit suggests—and clearly is intended to

suggest—that he did not raise the matter with his client. Mr. Sheketoff is not alone in proffering such affidavits. *See Zannino v. United States*, 871 F.Supp. 79, 85 (D.Mass.1994) (Joseph Balliro, Esq.); *Berthoff v. United States*, 140 F.Supp.2d 50, 58 (D.Mass.2001) *aff'd* 308 F.3d 124 (1st Cir.2002) (Brian McMenimen, Esq.). Because the Massachusetts Rules of Professional Conduct require a lawyer to "provide competent representation to a client," Mass. R. Prof. Conduct 1.1, this is properly a matter which ought concern the Massachusetts Board of Bar Overseers.

the conservative trial position of not presenting witnesses whose backgrounds are unknown. Owens now asserts that the failure of his trial counsel adequately to investigate Senator Owens' testimony forced them to make the decision not to proffer his testimony and that this constitutes ineffective assistance of counsel. In other words, Owens argues that it is not the decision not to call Senator Owens that is ineffective assistance, rather it is the failure properly to investigate Senator Owens' testimony, when first advised of it, that constitutes ineffective assistance.

The Court rejects this argument. As a matter of practical reality, when first advised of a potential alibi witness—one who is related to the defendant and allegedly had dinner with him on the night a murder occurred several years prior to trial—in the middle of trial, it is utterly reasonable and well within the standard of competence constitutionally required that a few weeks elapse before the testimony is investigated. Moreover, the Court was prepared to admit the testimony. Instead, after consultation with Owens, Owens' lawyers made a tactical decision not to call Senator Owens.

Had the testimony been made available to counsel months prior to the trial, failure to investigate before trial would be an entirely different matter. In this instance, however, faced with the pressures of an ongoing trial, the mere fact that counsel was able to call Senator Owens is surprising and is, in and of itself, evidence of the superior performance of counsel. There is no showing that trial counsel's performance fell below that constitutionally mandated. Accordingly, Owens' claim is denied.

**c. The Pattern of Pretextual Stops**

■ A vehicle near Memphis, Tennessee was stopped by the regional drug interdiction task force, and, from this stop, various evidence was admitted against Owens. *Owens,* 167 F.3d at 747. In 2000, approximately three years after Owens was convicted, Judge Clay of the Sixth Circuit noted, in a concurring opinion, that it appeared the same police who had conducted Owens' Tennessee stop might have been engaging in a pattern of unconstitutional pretextual stops. *United States v. Freeman,* 209 F.3d 464, 467 (6th Cir.2000) (Clay, J., concurring). Owens now argues that his trial counsel were ineffective because they did not investigate the Tennessee stops more fully and discover the pretextual argument that emerged years later.

This claim must be rejected. It is far-fetched at best to suggest that the failure of trial counsel, with limited resources and time, to investigate potential systemic pretextual stops in Memphis, Tennessee, in conjunction with a trial in Boston, Massachusetts constitutes ineffective assistance. Accordingly, this does not violate the first prong of *Strickland.* Moreover, the Court is unaware of any actual finding[15] that pervasive pretextual stops occurred or occur in Tennessee. Accordingly, as Owens has also failed to demonstrate that the outcome would likely be different, he has also failed to meet the second prong of *Strickland.* This argument must therefore be denied.

**d. The Third Prong of the Good Faith Exception**

Owens next contends that, in seeking suppression of the evidence obtained from the Parsons Avenue search, trial counsel failed to argue that the search warrant was so lacking in indicia of probable cause that no reasonable officer could have relied on it in good faith. *United States v. Leon,*

---

**15.** Dicta in one concurring appellate opinion does not constitute findings of fact.

468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This claim is entirely without merit.

Trial counsel argued that the search warrant failed the first and fourth prongs of *Leon. Owens,* 167 F.3d at 745. Thus, it certainly cannot be said that they were unattuned to arguments to suppress the evidence, and there is no indication that the argument in question would have succeeded. Owens argues that "[g]iven the lack of probable cause in the search warrant affidavit, had the defense advanced this argument, there is a reasonable probability that the Court would have suppressed the evidence or the First Circuit would have reversed on this basis." Pet'r's Mem. at 25. This puts the cart before the horse. To the contrary, the Court found that there was probable cause based on the Broadmeadow affidavit.

Applying *Strickland,* this Court holds that failing to advance the third prong of *Leon,* under such circumstances, does not fall below the level of competence constitutionally required. Moreover, Owens cannot demonstrate prejudice because he cannot show any likelihood that the argument would have succeeded and that it would have altered any aspect of his trial. Owens' claim, therefore, is without merit and is denied.

### e. Police Bias Because of Owens' Uncle

■ Owens' uncle, Senator Owens, was highly critical of the Boston Police Department. Pet'r's Mem. at 26. Accordingly, Owens argues that he was improperly targeted by that department, and evidence of this bias could have been used to impeach the testimony of various Boston Police officers.

In fact, Owens' trial counsel did seek to argue this basis for bias in impeaching the testimony of one officer, but was denied the opportunity by the Court because an insufficient proffer was made. Owens now submits several letters from the Boston Police Patrolmen's Association that state, in various forms, that the Association views Senator Owens' actions as despicable and unwarranted. The letters go on to advise Senator Owens that the Association will do everything in its power to assure his defeat in the next election.

This argument fails both prongs of *Strickland.* First, it is utterly specious to argue that the failure of trial counsel to obtain information in the possession of Owens' family is somehow the result of ineffective counsel. Counsel is not expected to be omniscient. Moreover, the argument, still unsupported by any further evidence, is so fantastic and incredible, especially in the face of the plethora of evidence and testimony directly implicating Owens, that trial counsel was utterly without fault in failing to allocate significant resources to investigate it.

Moreover, it fails *Strickland* because there is no showing of prejudice. Even in possession of the documents, the Court, on reflection, would not have permitted this line of questioning. The proffer would still have been found insufficient. Accordingly, no prejudice occurred and Owens' claim must be denied.

### f. The Internal Affairs File

■ Owens next argues that one of the testifying officers, Terrence O'Neil ("O'Neil"), had a substantial internal affairs file, the possession of which would have enabled effective impeachment. Trial counsel had sought the file, but at trial limited its request to information relative to any investigation of O'Neil's conduct in the Owens investigation. Trial Tr., Vol. 18 at 62–63. Trial counsel made this concession in the context of intense questioning by the Court regarding the need and propriety of disclosing the entire file. As

such, this constitutes a tactical decision by trial counsel designed to elicit the information most desired. It is common practice to ask for the moon and settle for a slice of cheese. Because this was a tactical decision, it is not a basis for an ineffective assistance claim. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Further, O'Neil was subject to equally intense cross examination that effectively called into question his testimony. Owens fails to demonstrate prejudice as required by *Strickland.*

### g. Third Party Exculpatory Evidence

■ After trial began, trial counsel received information that Lewis, the government informant, had told Eric Johnson ("Johnson") that he, Lewis, had killed Belle, the murder for which Owens was convicted. Trial counsel attempted to locate Johnson at his last known address—a shelter—but was unable to do so. Owens now asserts that their inability to locate Johnson, and thus investigate the exculpatory statement, constitutes ineffective assistance of counsel.

There is simply no requirement that counsel be able private investigators, competent to track down the whereabouts of individuals formerly living in shelters. Moreover, as this disclosure appeared in the heat of trial, with its attendant drains on human and financial resources, it cannot be ineffective assistance to choose to focus one's resources elsewhere. Accordingly, Owens' claim fails the first prong of *Strickland.* Further, there is no showing that this evidence would likely have changed the outcome of the trial. The evidence against Owens was significant. On cross examination, the trial counsel effectively impeached Lewis. Owens has failed to demonstrate prejudice and, thus, fails the second prong of *Strickland.* The Court denies this claim.

### h. Violation of the Witness Bribery Statute

Owens next argues that several witnesses' testimony ought have been rejected because they were under plea agreements with the prosecution. In other words, he argues that the plea agreements constitute bribery, but this position has been rejected by the First Circuit. *United States v. Franky–Ortiz,* 230 F.3d 405, 407 (1st Cir.2000). The Court declines to deviate from the First Circuit's decision and simply notes that failing to advance what is shown to be a losing argument cannot, as a matter of logic, constitute ineffective assistance of counsel.

### i. The Money Laundering Charge

■ Owens was convicted of money laundering under 18 U.S.C. section 1956(a)(1). Section 1956 applies to certain "financial transactions" which are defined, in relevant part, to be "a transaction which in any way or degree affects interstate or foreign commerce ...." 18 U.S.C. § 1956(c)(4)(A) (2000). In explaining its charge to the jury, the Court stated

Now, it's not necessary for the government to show that Mr. Owens actually intended or anticipated an effect on interstate commerce. Or even that interstate commerce was actually affected. What is necessary is that it be the natural and probable consequence of his actions to affect interstate commerce, no matter how minimally.

Trial Tr., Mar. 23 at 163. Trial counsel did not object to this charge.

Section 1956, however, requires proof of "something, some effect on interstate commerce." *United States v. Grey,* 56 F.3d 1219, 1225 (10th Cir.1995); *United States v. Aramony,* 88 F.3d 1369, 1386–87 (4th Cir.1996) (reversing conviction because the jury instruction "did not require the jury to make a finding on the interstate commerce element"). Both of the above cited

cases were decided well before Owens' trial concluded, and Owens argues, trial counsel ought have been on notice to object.

Owens litigated this issue on appeal and it was rejected. *Owens,* 167 F.3d at 755. To be sure, and the government concedes, the instruction was in error. The First Circuit, however, determined that the failure to object was subject to harmless error evaluation and that this had been harmless error. *Owens,* 167 F.3d at 755; *accord United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (holding that where evidence regarding uncharged element is essentially uncontroverted, failure to submit element to jury is not plain error).

Owens' argument, therefore, fails on several grounds. First, he has already litigated the issue on the merits and lost before the First Circuit. Under such circumstances, the Court may decline to hear the argument on collateral attack. Moreover, because it was harmless error, Owens cannot demonstrate prejudice and, therefore, cannot meet *Strickland*'s second prong. His claim, therefore, is denied.

### j. Defaulted Primary Habeas Claims

Owens finally claims that trial counsel's failure to object to the life sentence imposed on count ten, charging interstate travel to commit a crime of violence, and trial counsel's failure to object to the courtroom closure, constitute ineffective assistance of counsel. Owens' claims must be denied. First, the government does not contest the error in sentencing on count ten. Accordingly, the Court will resentence Owens with respect to that claim. Second, as discussed at length *supra,* there was no closure of the courtroom. Accordingly, any objection would have been meritless. Owens' claim, therefore, must be denied.

### 2. Appellate Counsel

The burden placed on appellate counsel is significant, and courts ought to be reluctant to second-guess tactical decisions. Appellate counsel are expected to cull from the many non-frivolous arguments the best and advocate only those. *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel has done just that in this case, with one exception. To show that appellate counsel was ineffective in light of their mandate, Owens must demonstrate that the ignored issues were clearly stronger than those advanced. *Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Owens argues several decisions of appellate counsel that, he asserts, constitute ineffective appellate counsel. The Court addresses Owens' assertions in a cursory fashion because they are without merit.

Owens argues that appellate counsel should have argued the courtroom closure issue. This Court has already found, supra, that there was no closure. Accordingly, the argument cannot be superior to other arguments.

Owens also argues that counsel failed to argue the issue concerning the murder instructions in that they constituted a constructive amendment to the indictment and that the sentencing violated *Apprendi.* This Court has already ruled that no constructive amendment occurred. Hence, that argument cannot be superior to others. As to the *Apprendi* argument, counsel cannot be ineffective for failing to anticipate Supreme Court decisions that are delivered years later. In other words, arguments that advocate controversial positions not yet adopted by the Supreme Court cannot constitute clearly superior arguments on appeal.

The Court need not consider whether the failure to argue that Owens was never

advised of his right to testify constitutes appellate error, because he was so advised.

■ Three arguments require closer scrutiny. First, Owens complains that his arguments regarding the Broadmeadow report were unheard by the First Circuit because of appellate error. The Court concludes that this does constitute lawyering beneath the constitutionally mandated level of proficiency. It is clear that appellate counsel tried to make the argument that the Broadmeadow report warranted a *Franks* hearing. It is also clear that, but for the procedural bungle of failing to appeal the motion to reconsider, the First Circuit would have addressed the issue on the merits. It seems clear beyond peradventure that appellate counsel, once a potentially valid argument is recognized, ought be able properly to present the argument to the court of appeals. Here, counsel failed to do so and, thus, has not met the applicable standard of advocacy.

Nevertheless, Owens is not entitled to the great writ. Having established the first prong of *Strickland,* his argument fails on the second. In short, the claim would have failed if the evidence had been presented to the First Circuit. The Broadmeadow report does not establish that the discrepancy was anything other than an innocent mistake. "There must be allegations of *deliberate* falsehood or of *reckless disregard* for the truth, and those allegations must be accompanied by an offer of proof." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674 (emphasis added). Here, though the Broadmeadow report suggests that certain statements in the warrant application may have been false, the proffer of proof does not indicate deliberate or reckless disregard for the truth. The Court and the First Circuit therefore would not have granted a *Franks* hearing absent evidence that the discrepancy was intentional. As no such evidence was prof-

fered, the Court's rulings would not have changed and no prejudice occurred.

Owens further argues that the jury charge regarding the RICO violation was improper because it required the government to prove mere participation in the enterprise, not direction of the enterprise. Owens' trial counsel argued this on appeal, but the First Circuit denied the claim. Owens now argues that the denial, which was founded on Owens' inability to demonstrate prejudice, was occasioned by appellate counsel's failure to argue the issue before the First Circuit properly. This Court denies this claim for precisely the same reason the First Circuit rejected it: Owens cannot show prejudice.

Habeas counsel now argues that the prejudice suffered occurred because trial counsel, at closing argument, stated that the Court would require the jury to find that Owens directed the ring. Trial counsel further argued that Owens had not directed any drug ring. Habeas counsel argues that this argument prejudiced Owens because it jeopardized the credibility of trial counsel. In other words, with the assurance of the Court, trial counsel advised the jury on what the Court would charge—and then was proven wrong. This simply does not constitute prejudice as it is too speculative in the face of the great weight of evidence. Accordingly, this claim is denied.

Finally, Owens argues that appellate counsel failed to object to the First Circuit's application of the wrong standard in evaluating one of his claims on appeal. In short, appellate counsel argued that some of the evidence seized from the Parsons Avenue house ought have been suppressed because the evidence was beyond the scope of the search warrant. The First Circuit determined that, assuming *arguendo* that the search went beyond the scope of the warrant, "the admission of such

evidence at trial was harmless error beyond a reasonable doubt." *Owens,* 167 F.3d at 746.

Owens' argument derives from the government's memorandum as appellee to Owens' appeal. In that brief, the government argued that any error constituted harmless error. Owens' appellate counsel never replied that the appropriate standard is that set out by *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Chapman* states that the appropriate harmless error inquiry is whether there is any possibility the error might have led to the conviction. *Id.* at 23, 87 S.Ct. 824. This is an odd argument, because this Court must indulge the strong presumption that the First Circuit itself knows the law. Accordingly, this Court respectfully rules that, in finding that the alleged error was "harmless beyond a reasonable doubt," the First Circuit appears to have applied the *Chapman* standard. Owens' appellate counsel cited *Milton v. Wainwright,* 407 U.S. 371, 372, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), which discusses *Chapman.* Thus, the First Circuit was apprized of the correct standard. This claim must also be denied.

### III. CONCLUSION

Owens presents a remarkably exhaustive petition for the writ of habeas corpus. In it, he makes several interesting arguments, but the Court rejects most of them.

For the foregoing reasons, the petition for writ of habeas corpus [Docket No. 1] is DENIED in part. This case is directed to be redrawn, so that another judge may address Owens' arguments with respect to his contention that the swearing in of an Assistant United States Attorney impermissibly tainted the trial and that failure

to argue this point previously constituted ineffective assistance of appellate counsel.[16] Furthermore, with respect to Owens' sentence for engaging in interstate travel to commit a crime of violence (count ten), the Court orders that the sentence of Owens be corrected to reflect a sentence of five years imprisonment, to run concurrently, and vacates the sentence of life imprisonment for engaging in this crime.

SO ORDERED.

---

**16.** The First Circuit has recently given explicit approval to the practice of partial recusal. *Ellis v. United States,* 313 F.3d 636 (1st Cir. 2002) ("a judge may, in an appropriate case, decide certain issues and recuse himself or herself as to others.")